Colin H. Murray (State Bar No. 159142)
  colin.murray@bakermckenzie.com
Teresa H. Michaud (State Bar No. 296329)
  teresa.michaud@bakermckenzie.com
**BAKER & McKENZIE LLP**
Two Embarcadero Center, 11th Floor
San Francisco, CA 94111
Telephone: +1 415 576 3000
Facsimile:  +1 415 576 3099

W. Barton Rankin (*Admitted Pro Hac Vice*)
  w.rankin@bakermckenzie.com
**BAKER & McKENZIE LLP**
2300 Trammell Crow Center
2001 Ross Avenue
Dallas, Texas 75201
Telephone:  +1 214 978 3000
Facsimile:  +1 214 978 3099

Attorneys for Plaintiff
Lilith Games (Shanghai) Co. Ltd.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| Lilith Games (Shanghai) Co. Ltd.,<br><br>            Plaintiff,<br><br>    v.<br><br>uCool, Inc. and uCool Ltd.,<br><br>            Defendants. | Case No. 15-cv-01267-SC<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>**[Fed. R. Civ. P. 65]**<br><br>**Date:         June 26, 2015**<br>**Time:         10:00 a.m.**<br>**Courtroom:  1, 17th Floor**<br>**Before:       The Hon. Samuel Conti** |

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
Tel: 1 415 576 3000

CASE NO. 15-cv-01267-SC
PLTF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMO OF P&A IN SUPPORT

1

**NOTICE OF MOTION**

2        NOTICE IS HEREBY GIVEN that on June 26, 2015 at 10:00 a.m., or as soon thereafter as

3   counsel may be heard, before The Honorable Samuel Conti, in Courtroom 1, located at 450 Golden

4   Gate Avenue, San Francisco, California  94102, Plaintiff Lilith Games (Shanghai) Co. ("Lilith") will

5   and hereby does move this Court, pursuant to Federal Rule of Civil Procedure 65, for an order

6   enjoining Defendants from reproducing, copying, preparing any derivative works, and/or distributing

7   any of Lilith's registered copyrights, all as set forth in more detail below.  This motion is based upon

8   this notice of motion and the following memorandum of points and authorities, on the accompanying

9   declarations of Jason Ray, Wang Xinwen, Yang Xianmin, Hu Rui, Zhang Zhenxin, and W. Barton

10  Rankin, the proposed order lodged herewith, and upon such other matters as may be presented to the

11  Court at or before the time of the hearing.

12

**RELIEF REQUESTED**

13        By this motion, Lilith respectfully requests that the Court enter an order enjoining uCool,

14  Inc., and uCool Ltd. from reproducing, copying, preparing any derivative works, and/or distributing

15  any of Lilith's trade secrets and/or registered copyrights that are the subject of this motion, including

16  but not limited to any such trade secrets and/or copyrighted works that are unlawfully contained in

17  uCool's game Heroes Charge, and grant Lilith all other relief to which it is entitled.

18  Dated:    May 5, 2015                          Respectfully submitted,

19                                               **BAKER & McKENZIE LLP**
20                                               Colin H. Murray
                                                 Teresa H. Michaud

21                                               **BAKER & McKENZIE LLP**
22                                               W. Barton Rankin

23
                                                 By:  /s/ Colin H. Murray
24                                                     Colin H. Murray
                                                     Attorneys for Plaintiff
25                                                   Lilith Games (Shanghai) Co. Ltd.

26

27

28

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
Tel: 1 415 576 3000

CASE NO. 15-cv-01267-SC
PLTF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMO OF P&A IN SUPPORT

# TABLE OF CONTENTS

**Page No.**

STATEMENT OF ISSUES TO BE DECIDED ................................................................... 1

I.    INTRODUCTION ................................................................................................... 1

II.   FACTUAL BACKGROUND ..................................................................................... 3

  A.   Lilith independently created Sword and Tower and holds valid a valid copyright and trade secret in the originally authored source code contained therein. .......................................................................................................... 3

  B.   Sword and Tower was released on the App Store in February 2014 for download in China and became wildly successful. ........................................... 5

  C.   uCool copied, advertised, and distributed Lilith's trade secret and copyright as its own .......................................................................................................... 6

  D.   Lilith discovered that uCool directly copied Lilith's protected computer software code. .................................................................................................. 10

  E.   uCool's infringement and misappropriation has damaged Lilith's reputation among consumers and its relationships with its distributors. ........................... 12

III.  ARGUMENT ........................................................................................................ 14

  A.   Lilith is entitled to bring an action for copyright infringement under the Berne Convention. ...................................................................................................... 14

  B.   To avoid continued irreparable harm, uCool should be enjoined from engaging in any further acts that infringe upon Lilith's intellectual property rights. ............................................................................................................ 14

  1.   In view of uCool's blatant copying, Lilith is likely to succeed on its copyright infringement claim. ............................................................................................ 15

  2.   In view of uCool's blatant usage of Lilith's software code, Lilith is also likely to succeed on its trade secret misappropriation claim ............................... 18

  3.   Lilith will suffer irreparable harm if an injunction is not granted. ............................ 20

  4.   The balance of equities between the parties and the public interest weigh in favor of granting an injunction. .................................................................... 23

IV.   CONCLUSION ...................................................................................................... 24

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
Tel: 1 415 576 3000

i

CASE NO. 15-cv-01267-SC
PLTF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMO OF P&A IN SUPPORT

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page No(s).</u>

3

<u>Cases</u>

4

*Alliance for the Wild Rockies v. Cottrell*,

5

632 F.3d 1127 (9th Cir. 2011) ...................................................................................15

6

*Apple Computer, Inc. v. Microsoft Corp.*,

7

35 F.3d 1435 (9th Cir. 1994) ....................................................................................17

8

*Brocade Commc'ns Sys v. A10 Networks, Inc.*,

No. 10-3428 PSG, 2013 U.S. Dist. LEXIS 8113 (N.D. Cal. Jan. 10, 2013).................................16

9

*Brown Bag Software v. Symantec Corp.*,

10

960 F.2d 1465 (9th Cir. 1992) ............................................................................17, 18

11

*Cadence Design Sys., Inc. v. Avant! Corp.*,

125 F.3d 824 (9th Cir. 1997) ....................................................................................23

12

*Creative Tech. v. Aztech Sys. PTE Ltd.*,

13

61 F.3d 696 (9th Cir. 1995) ......................................................................................14

14

*Feist Publications v. Rural Tel. Serv. Co.*,

15

499 U.S. 340 (1991)..................................................................................................15

16

*Flextronics Int'l v. Parametric Tech. Corp.*,

No. C 13-0034 PSG, 2013 U.S. Dist. LEXIS 133403

17

(N.D. Cal. Sep. 16, 2013)...............................................................................16, 20, 23

18

*Indep. Living Ctr. of S. Cal., Inc. v. Maxwell-Jolly*,

19

572 F.3d 644 (9th Cir. 2009) ....................................................................................14

20

*JCW Invs., Inc. v. Novelty, Inc.*,

482 F.3d 910 (7th Cir. 2007) ....................................................................................17

21

*L.A. Printex Indus. Inc. v. Aeropostale, Inc.*,

22

676 F.3d 841 (9th Cir. 2012) ....................................................................................15

23

*Meta-Film Assocs. v. MCA*,

586 F. Supp. 1346 (C.D. Cal. 1984) .........................................................................16

24

*Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*,

25

944 F.2d 597 (9th Cir. 1991) ....................................................................................20

26

*Rovio Entm't Ltd v. Royal Plush Toys, Inc.*,

27

2012 U.S. Dist. LEXIS 169020 ..........................................................................20, 21

28

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
Tel: 1 415 576 3000

ii

CASE NO. 15-cv-01267-SC
PLTF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMO OF P&A IN SUPPORT

*Shaw v. Lindheim*,
    919 F.2d 1353 (9th Cir. 1990) ....................................................................................18

*Spry Fox, LLC v. Lolapps, Inc.*,
    No. C 12-147 RAJ, 2012 U.S. Dist. LEXIS 153863 (W.D. Wash. Sep. 18, 2012) ................17, 18

*Three Boys Music Corp. v. Bolton*,
    212 F.3d 477 (9th Cir. 2000) ....................................................................................16

*Winter v. Natural Res. Def. Council, Inc.*,
    555 U.S. 7 (2008)....................................................................................................14

### <u>Statutes</u>

17 U.S.C. § 101 *et seq.*..............................................................................................14

Berne Convention art. 5, Sept. 9, 1886 (Paris Text 1971), 102 Stat. 2853............................14

### <u>Other Authorities</u>

Fed.R.Civ.P. 65 ........................................................................................................1

5 Melville B. Nimmer, David Nimmer, *Nimmer on Copyright* § 17.01 (2014) ....................14

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
Tel: 1 415 576 3000

CASE NO. 15-cv-01267-SC
PLTF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMO OF P&A IN SUPPORT

**STATEMENT OF ISSUES TO BE DECIDED**

Lilith owns copyrights in the computer software code embodied in its game "Dao Ta Chuan Qi," which means "the legend of sword and tower" ("Sword and Tower"). The software code in Sword and Tower also constitutes Lilith's trade secret. uCool has, without authorization, copied that protected code and released a virtually identical game called Heroes Charge. As a result, and for the reasons stated herein, Lilith respectfully requests that the Court grant this motion and enter a preliminary injunction, precluding uCool from infringing on Lilith's copyrights and further misappropriating Lilith's trade secret through, among other things, the advertisement and/or distribution of its game Heroes Charge.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

A copyright holder, such as Lilith, is entitled to a preliminary injunction if a competitor is misappropriating its trade secret or infringing its copyrights to the detriment of the copyright holder's business reputation and/or good will. In this case, Lilith owns trade secrets and registered copyrights in its originally developed game titled "Dao Ta Chuan Qi," which means "the legend of sword and tower" ("Sword and Tower"). uCool, Inc. and uCool Ltd. (collectively, "uCool") unlawfully obtained a copy of Lilith's protected computer software code and performed a virtual cut and past into its game Heroes Charge. uCool's infringement is so pervasive that it copied a portion of Lilith's code that triggers a copyright notice during a certain point deep into the game. The following screen shot showing Lilith's copyright declaration was actually taken while playing ***uCool's Heroes Charge***:



1

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
Tel: 1 415 576 3000

CASE NO. 15-cv-01267-SC
PLTF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMO OF P&A IN SUPPORT

uCool's unquestioned copyright infringement and trade secret misappropriation has and continues to cause Lilith irreparable harm. For example, in March 2015, Lilith began to enter markets outside of China in which uCool had released Heroes Charge. Soon thereafter, Lilith became aware from its distributors that uCool's infringing game was depriving them of bargained for exclusivity. Lilith further became aware that users in those markets actually thought that Lilith had copied uCool's game, which is clearly not the case, but disparaging to Lilith's reputation and good will nonetheless. Further, other distributors, including those in the United States, have refused to enter into exclusive arrangements with Lilith, stating that uCool's release of Heroes Charge deprives them of any exclusivity rights. uCool's unlawful conduct also deprives Lilith and its distributors the opportunity to build its customer base in its copyrighted works—opportunities and rights that Lilith and its distributors would otherwise have.

Lastly, as the Court is aware, Lilith previously filed a motion for preliminary injunction in this matter that was set fort a hearing on June 12, 2015. Lilith also intended to take expedited discovery in support of that motion and proposed a schedule to uCool for doing so. *See* (ECF No. 17 p. 16;) Declaration of W. Barton Rankin filed herewith ("Rankin Decl.") ¶ 7, Ex. 6. In response, uCool lodged a series of objections, calling the proposed schedule "unreasonable," "court-unfriendly," "a recipe for mischief," and demanded that Lilith "re-file the motion with all of your relied upon evidence." *Id.* ¶ 8, Ex. 7. In other words, uCool argued that the parties should resolve and take any appropriate discovery first, and then re-file the motion such that the evidence could be presented in one briefing cycle. *Id.* In an effort to resolve some disputes without the need for Court intervention, Lilith agreed to withdraw the motion without prejudice such that the discovery issues could be resolved and the preliminary injunction motion could be refiled. *Id.* ¶ 9, Ex. 8. Despite the opportunity, uCool did not object to that approach. *Id.* ¶ 10, Ex. 9. Indeed, it was uCool that proposed that the parties proceed in that manner. After inducing the notice of withdrawal from Lilith, uCool filed a "Response" to the notice and represented to the Court that the withdrawal was "nonsensical," and that "there is no reason" why Lilith could not seek and use discovery in support of the preliminary injunction request while that motion was pending. (Defs.' Resp. to Pl.'s Notice of Withdrawal Without Prejudice p. 2, ECF No. 28.) In view of that bait and switch from uCool, Lilith

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
Tel: 1 415 576 3000

2

CASE NO. 15-cv-01267-SC
PLTF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMO OF P&A IN SUPPORT

now re-files this motion for preliminary injunction and will simultaneously seek expedited discovery to be used in support of this relief sought herein—an approach that uCool, despite previous statements to the contrary—now agrees is appropriate.  (*Id.*)

## II.   FACTUAL BACKGROUND

### A.   Lilith independently created Sword and Tower and holds valid a valid copyright and trade secret in the originally authored source code contained therein.

Lilith, a Chinese entity, was founded in 2013 for the purpose of developing games for mobile devices, such as iPhones and iPads.  *See* Declaration of Wang Xinwen filed herewith ("Wang Decl.") ¶ 2.  Sword and Tower was developed from approximately January 2013 to its launch in China on December 2013, and its release on the Apple App Store on February 25, 2014.  *See* Declaration of Zhang Zhenxin filed herewith ("Zhang Decl.") ¶ 3.  For this game, Lilith's employees were required to, among other things, determine rules to govern the game, design and create the appearance of the game, and author the computer source code to bring the game to life.  *Id.* ¶¶ 3-4.  To author the source code, there are a number of different ways that a programmer could perform that task.  *Id.* ¶ 5.  The specific order and architecture of Lilith's code, however, is unique in Sword and Tower.  *Id.*  The code that was written by Lilith's employees to implement the rules, designs, and other developmental elements of Sword and Tower and to enable the game's performance, advancement, interface between the various aspects of the game, etc. . . was written in a programming language called Lua.  *Id.* ¶ 4.  Lilith's employees originally authored approximately 240,000 lines of code in that language.  *Id.*

That code, written in Lua, is separate from the other code that is needed for the game to function.  *Id.*  For example, when a player downloads Sword and Tower from the App Store, the published or downloaded package contains three parts:  (1) the game written by Lilith in Lua;  (2) the open-source engine Cocos2d-x, of which there is approximately 1,737,487 lines of source code;

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
Tel: 1 415 576 3000

3

CASE NO. 15-cv-01267-SC
PLTF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMO OF P&A IN SUPPORT

and (3) the SDK provided by Apple.  *Id.*  It is just the Lua code authored by Lilith that Lilith maintains a trade secret in and has copyrighted.

Indeed, Lilith has always maintained its originally authored code as a secret.  In particular, Lilith has at all times maintained its source code on a system called the "P4."  *Id.* ¶ 8.  The P4 system is password protected and can only be accessed through employee-specific credentials.  *Id.*  Such credentials are only provided to those employees that have a need for the information to perform their specific job functions as a Lilith employee.  *Id.*  As of the date of this motion, only 21 Lilith employees have ever been given such credentials to access Lilith's source code.  *Id.*  Further, of those 21 employees, 19 of them are still currently employed full-time with Lilith.  *Id.* ¶ 6.  Of the two employees that are no longer with the company, one was a co-founder of Lilith, who left Lilith approximately two months after Lilith was founded, before the vast majority of the source code from Sword and Tower was drafted.  *Id.* ¶ 5.  Lilith is not aware of any evidence to suggest that he took any portion of the source code within him upon his departure.  Indeed, that would have been directly contrary to company policy.  *See id.*

The other former employee that had a password to access Lilith's source code only worked one month for Lilith in 2014.  *Id.* ¶ 6.  In addition to only being there a short time, that employee also signed an employment agreement that contained a confidentiality clause, expressly prohibiting the disclosure of Lilith's source code or other proprietary information to any third party.  *Id.*  Similarly, each of the other 19 employees that have had access to Lilith's source code and are still employed by Lilith have signed confidentiality agreements.  *Id.*  Those agreements each expressly prohibit the applicable employee from, among other things, disclosing Lilith's source code to anyone outside of Lilith.  *Id.*  Further, Lilith has at no time employed sub- or independent contractors to create the source code embodied in Sword and Tower.  *Id.* ¶ 7.

In addition to maintaining that source code as a confidential trade secret, Lilith has also

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
Tel: 1 415 576 3000

obtained a valid Chinese registered copyright in that original work.  As set forth above, the software code written in Lua that is embodied in Sword and Tower corresponds to the originally created rules, designs, look, and appearance of the game that was created exclusively by Lilith employees.  *Id.* ¶¶ 3-5.  The employment agreements with those programmers expressly state that any code created during the course of their employment is exclusively owned and constitutes Lilith's property.  *Id.* ¶ 6.  Just like in the United States, a software code owner in China is able to obtain copyright protection over that code.  Accordingly, Lilith filed the necessary papers and obtain a valid copyright registration for the software code embodied in Sword and Tower.  Wang Decl. ¶ 4, Ex. A.  The Chinese registration expressly lists Lilith as the owner of the copyright.  *Id.*  To maintain the secrecy of that code, however, Lilith was not required to provide a full and complete copy to the Chinese copyright office, and consequently, a copy of Lilith's software code is not available, publicly or otherwise, through the Chinese copyright office.  *Id.* ¶ 4.

> **B.     Sword and Tower was released on the App Store in February 2014 for download in China and became wildly successful.**

Sword and Tower was released in February 2014, through Apple's App Store and downloadable in China.  Wang Decl. ¶ 5.  The game quickly became immensely popular.  By May 2014, Sword and Tower was named as China's top grossing iOS game, and by August 2014, Sword and Tower had become the number one game in all of Asia.  *Id.*  As of March 2015, the game has been downloaded over 29 million times through one distribution channel alone.  *Id.*   The following are just some of the accolades from major online media outlets in China from March – August 2014, which have been translated to English:

- "On the TOP 10 list of mobile games, the top two are Sword and Tower and Space Hunter, remaining the same as in June. In particular, since launched on 360 platform in March, Sword and Tower has for more than 4 weeks remained first among mobile games in respect of revenue. It keeps strong profitability even after the heat of first publication."

- "The breaking record of RMB 20 million in a single day made Sword and Tower the well-deserved winner during the public test. It has now become the hottest super star

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
Tel: 1 415 576 3000

among all mobile games in 2014. Its remaining championship on various lists of iOS and Android platforms has made it the most popular mobile game."

- "Longtu Game launched the Android version of the Sword and Tower. The game was popular than expected and ranked high on downloading lists of various downloading platforms within a short time. The operator of the game had to open four more servers within only several hours after launching the game."

- "According to a report issued by Baidu, the dark horse mobile game Sword and Tower remained first in the list of Revenue and list of Retention Rate in April and May."

*See* Declaration of Hu Rui filed herewith ("Hu Decl.") ¶ 4, Ex B.

Based on that success, Lilith developed plans to release Sword and Tower in other countries, including the United States.  Wang Decl. ¶ 6.  Lilith specifically entered into distribution agreements for the release of Sword and Tower in Europe, Southeast Asia, Korea, and Japan.  *Id.*  According to those agreements, Lilith's distributors would have the exclusive right to distribute Sword and Tower in their respective territories.  *Id.*  Before Lilith could implement its plans to further distribute Sword and Tower, however, it discovered that uCool had released a game called Heroes Charge that infringes Lilith's copyrights.  Because of that infringement, Lilith has been unable to secure an exclusive distributor in the United States. Wang Decl. ¶ 9.

### C.   uCool copied, advertised, and distributed Lilith's trade secret and copyright as its own.

As a general overview of Sword and Tower, the game begins with characters named, the Captain, Ember, and Noire being defeated in a battle, who then embark on the game's mission.  *See* Declaration of Yang Xianmin filed herewith ("Yang Decl.") ¶ 3.  The Captain is armed with a sword, Ember throws fire, and Noire has a bow and arrow.  *Id.*  In each chapter of the game, there are typically 6 to 7 battle stages, and in each stage, the heroes fight in three battle sequences, with the "Boss" of the stage fighting in the third sequence.  *Id.*  When engaging in a battle, an image of each hero is displayed at the bottom of the screen, and one bar shows the level of life retained by each hero at a given time.  *Id.*  A second bar shows the proximity of a hero being able to use his or

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
Tel: 1 415 576 3000

her special weapon. *Id.* When that bar is full, the hero's image is highlighted to indicate that the special weapon is ready for use. To use that weapon, the user taps the highlighted image of the hero. *Id.* uCool's game Heroes Charge, which undisputedly was released after Sword and Tower, is virtually identical in every meaningful way. *Id.* ¶¶ 3 & 8. The following is an example of screen shots from the two games evidencing their striking similarity:

**Sword and Tower**



**Heroes Charge**



Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
Tel: 1 415 576 3000

CASE NO. 15-cv-01267-SC
PLTF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMO OF P&A IN SUPPORT

As the player further progresses in the game, he or she can also "summon" new heroes. Yang Decl. ¶ 5.  For example, after completing different battle stages, the "Boss" that was defeated can become a Hero.  *Id.*  Specifically, once the player has completed the specified tasks, the new hero is unlocked and can be "summoned."  *Id.*  Further, before each battle, a screen appears showing the player the enemies and the "Boss" he or she will face, as well as the rewards that they will receive if successful.  *Id.*  On that screen, the information is expressed to the player by showing the title of the stage, a quote concerning the upcoming battle, the player's energy shown with the drumstick icon, the enemies, and the "Boss," as well as the items to be gained if successful, all as images depicted in boxes.  *Id.*  uCool's Heroes Charge is played in the exact same way, and its expressions of those game elements is almost identical to Sword and Tower as the following screenshots show:  A screen shot of this aspect of Sword and Tower is set forth as follows:

**Sword and Tower**



Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
Tel: 1 415 576 3000

**Heroes Charge**



*Id.* ¶¶ 5 & 10.

In Sword and Tower, the player can equip the hero with the items that the hero collects by winning battles, and if the hero has six such items, the player can increase the hero's strength by "fusing" the items through clicking a button entitled "fuse."  Yang Decl., ¶ 6.  In uCool's Heroes Charge, the player can also equip the hero with items that are collected by winning battles, and if the hero has six such items, the player can increase the hero's strength or abilities by clicking on a similarly placed button entitled "promote."  *Id.* ¶ 11.  Again, this process is performed in the same manner as in Sword and Tower, and again, the screen shots below reflect that Heroes Charge is a virtual direct copy:

**Sword and Tower**

9

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
Tel: 1 415 576 3000

CASE NO. 15-cv-01267-SC
PLTF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMO OF P&A IN SUPPORT

**Heroes Charge**



The foregoing are just a few examples of uCool's copying.  Additional, albeit still non-exhaustive, examples are included in the Yang Decl. filed in support of this motion.  *Id.* Ex. A.  As one might expect, the substantial similarities in the two games was no accident.  Rather, in its pre-suit investigation leading to the filing of this lawsuit, Lilith discovered direct evidence of uCool's misappropriate and infringement.

**D.     Lilith discovered that uCool directly copied Lilith's protected computer software code.**

To protect its software code, Lilith embedded a copyright declaration that would appear during a certain point in the game.  Wang Decl. ¶ 7; Yang ¶ 12.  If the software is copied, as uCool did here, this embedded copyright declaration appears in the infringer's game.  *Id.*  In March 2015, Lilith's representative's in China purchased an iPad and downloaded Heroes Charge from the App Store.  Yang Decl. ¶ 12; Rankin Decl. ¶ 5, Ex 4.  Lilith's representative then navigated to the point in the game where the embedded copyright declaration would be if uCool had copied Lilith's code.  *Id.*  As expected, Lilith's copyright designation was triggered in Heroes Charge, and the following is a screen captured from ***uCool's own game***:

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
Tel: 1 415 576 3000

Lilith also retained a third-party consultant, Jason Ray, to perform this same exercise in the United States.  Specifically, on March 18, 2015, Mr. Ray purchased an iPad Air tablet computer from an Apple Store located at 1 Stockton Street, San Francisco, California 94108.  *See* Declaration of Jason Ray filed herewith ("Ray Decl.") ¶ 6.  Mr. Ray then accessed Apple's App Store and downloaded a copy of Heroes Charge.  *Id.* ¶ 9.  After the game had been downloaded, Mr. Ray logged in through Apple's Game Center as an existing player, which would restore the game to an existing save point.  *Id.* ¶ 11(h).  This was required such that Mr. Ray would not have to spend an inordinate amount of time learning how to play, and playing Heroes Charge to reach the advancement level where Lilith's copyright declaration is embedded.  *Id.*  Thus, using a previously saved game, Mr. Ray was able to navigate to the "Ancient Temple" where he selected the "Rules" interface button that was presented on the screen.  *Id.* ¶ 11(l).  When the Rules page was displayed, Mr. Ray tapped the number 5 corresponding to rule 5 listed on that page, and on the 12th touch, the following box was displayed, again in ***uCool's own game***:

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
Tel: 1 415 576 3000

11

CASE NO. 15-cv-01267-SC
PLTF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMO OF P&A IN SUPPORT



Ray Decl., ¶¶ 11(n) and (p).  A video detailing Mr. Ray's actions is also being filed and served manually and is Exhibit A to Mr. Ray's declaration.  uCool copied Lilith's protected computer software code, and in view of the foregoing, uCool cannot credibly argue otherwise.

**E.    uCool's infringement and misappropriation has damaged Lilith's reputation among consumers and its relationships with its distributors.**

uCool's unlawful copying has caused confusion in the marketplace to Lilith's detriment.  For example, beginning in March 2015, Lilith released Sword and Tower in several European countries, and almost immediately, Lilith began receiving critical comments from users who were under the impression that Lilith had in fact copied Heroes Charge.  Wang Decl. ¶ 8, Ex. B.  Lilith has experienced similar feedback in Japan, where its game goes by the name of Soul Clash.  *Id.*  Indeed, users in Japan have provided comments that Soul Clash is a copy of Heroes Charge.  *Id.*  It is clearly the other way around.  The user's reactions show that uCool's infringement and misappropriation has created confusion among the public about the origins of this game, irreparably harming Lilith's reputation as a game developer in the process.  The following are just a few examples of the disparaging comments that have been posted about Lilith:

> I can't review this because this is completely a copycat.
> When I saw this, I was thinking, "what? completed copied from HC"
> The copying is just too close

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
Tel: 1 415 576 3000

★☆☆☆☆
App version 2.1.1
Galaxy S4 (jflte)

Sebastian Wilczek on Mar 16, 2015 at 1:40 AM

Fail Dude seriously???? Total copy of heroes charge .You don't have an idea for your own game dude? ??? Wtf??????? Big lol seriouuusillllyyyy?????? Zal

★★☆☆☆
App version 2.1.1
Xperia M dual (C2005)

Вова Кирик on Mar 17, 2015 at 3:13 AM

Auto-translated from Russian

A copy of another game The same dynamics, mechanics, engine, a copy of heroes charge Hide original review

Original review

Копия другой игры Динамика та же, механика, движок, копия heroes charge

Wang Decl. ¶ 8, Ex. B.

Lilith's relationships with its distributors has also been adversely affected by uCool's infringement.  Lilith has entered into distribution agreements with various entities for the purpose of releasing Sword and Tower in the distributor's respective territory.  Wang Decl. ¶ 6.  For example, Lilith has entered into distribution agreements with entities for the release of Sword and Tower in Europe, Southeast Asia, Korea and Japan.  *Id.*  Those agreements grant the distributor the exclusive right to release Sword and Tower in their agreed upon geographic area.  *Id.*  uCool's infringement, however, significantly lessens the value of those exclusive arrangements and precludes Lilith and its distributors from establishing a relationship with the marketplace that it would otherwise be entitled to, but for uCool's infringement.  Wang Decl. ¶ 9.  Moreover, because Heroes Charge is being released in the United States, Lilith has not been able to obtain an exclusive distribution agreement here.  *Id.*  Lilith's offers have been rejected because, as long as uCool is permitted to release Heroes Charge in the United States, Lilith cannot offer true exclusivity.  *Id.*  This is Lilith's preferred method of distribution, however, and without such an arrangement, Lilith is not able to effectively release its game, and effectively exercise its exclusive copyrights to Sword and Tower, in the United States.  *Id.*  Thus, in view of uCool's indisputable copyright infringement and trade secret misappropriation and the resulting irreparable damage caused to Lilith's reputation and business relationships, Lilith moves for and respectfully requests that the Court enter a preliminary injunction against uCool.

13

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
Tel: 1 415 576 3000

CASE NO. 15-cv-01267-SC
PLTF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMO OF P&A IN SUPPORT

## III.   ARGUMENT

### A.   Lilith is entitled to bring an action for copyright infringement under the Berne Convention.

In one letter responding to Lilith's attempts to resolve this dispute without the need for Court intervention, uCool argued that, because Heroes Charge has not been made available in China, uCool could not be liable for infringing Lilith's Chinese registered copyrights.  Rankin Decl., ¶ 3, Ex 2.  Contrary to that argument, under the Berne Convention, to which the United States acceded in 1989 and which China signed in 1992, the fact that uCool did not release its game in China does not insulate it from this cause of action.  *See* Berne Convention art. 5, Sept. 9, 1886 (Paris Text 1971), 102 Stat. 2853; 5 Melville B. Nimmer, David Nimmer, *Nimmer on Copyright* § 17.01 (2014).  In particular, under the Berne Convention each member of the convention must provide "national treatment" to citizens of other member nations.  Berne Convention art. 5, Sept. 9, 1886 (Paris Text 1971), 102 Stat. 2853.  In other words, authors, such as Lilith, are entitled to enjoy the same protection of their Chinese registered copyrights in the United States as the United States affords to any U.S. work.  *Id.*; *Creative Tech. v. Aztech Sys. PTE Ltd.*, 61 F.3d 696, 705-06 (9th Cir. 1995) (Ferguson, J., dissenting).  Thus, Lilith could bring a lawsuit in the United States to enforce its copyrights registered in China and seek the same recourse that would otherwise be available for a United States work under 17 U.S.C. § 101 *et seq.*  Lilith has done just that, and this Court can appropriately exercise jurisdiction over this matter.

### B.   To avoid continued irreparable harm, uCool should be enjoined from engaging in any further acts that infringe upon Lilith's intellectual property rights.

The determination to grant a motion for preliminary injunction is largely within the discretion of the district court.  *Indep. Living Ctr. of S. Cal., Inc. v. Maxwell-Jolly*, 572 F.3d 644, 651 (9th Cir. 2009).  The moving party must show that the following elements exist, as they do here, to be entitled to a preliminary injunction:  (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction is in the public interest.  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  The Ninth Circuit further applies a sliding

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
Tel: 1 415 576 3000

scale test, under "which the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). In this case, all of the required elements are present, and Lilith is entitled to an injunction, which is necessary to adequately protect its valid trade secret and copyright.

      1.      **In view of uCool's blatant copying, Lilith is likely to succeed on its copyright infringement claim.**

      To prevail on a copyright infringement claim, the plaintiff must show (1) ownership of a valid copyright; and (2) copying of the original elements of the protected work. *Feist Publications v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). With respect to the first element, Lilith owns the copyright at issue here. *See* Wang Decl. ¶ 4, Ex. A. The source code was created exclusively by Lilith's employees for Lilith's ownership. Zhang Decl. ¶¶ 5-7. The Chinese registration expressly lists Lilith as the owner of the copyrighted computer software code. *Id.* Thus, there can be no question that Lilith will likely succeed in meeting the first element of its copyright infringement claim. Similarly, Lilith will also succeed in proving the second element, i.e., that uCool has copied Lilith's protected computer software.

      The second element can be established by either presenting direct evidence of copying, or absent that, circumstantial evidence that the infringer (1) had access to the copyrighted work, and (2) that the parties' works are substantially similar. *L.A. Printex Indus. Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 846 (9th Cir. 2012). Lilith can meet the second element through both direct and circumstantial evidence. This matter presents one of those rare cases where there is indisputable evidence that uCool directly copied Lilith's copyright protected software code. Specifically, as set forth above, Lilith embedded deep within its software a copyright declaration that, if triggered, results in a pop-up window reading "LILITH GAMES ©." Wang Decl. ¶ 7; Ray Decl. ¶ 11. To trigger this copyright declaration, it requires that someone play the game for approximately two weeks to obtain the necessary credentials to access the appropriate screen. *See* Ray Decl. ¶ 11(h). Accordingly, for Lilith's copyright declaration to have been embedded in uCool's game, which it was, it cannot be said that uCool's copying of Lilith's code was *de minimis*. Rather, uCool's

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
Tel: 1 415 576 3000

unauthorized copying is substantial.  *See Flextronics Int'l v. Parametric Tech. Corp.*, No. C 13-0034 PSG, 2013 U.S. Dist. LEXIS 133403, at *18 (N.D. Cal. Sep. 16, 2013);  *Brocade Commc'ns Sys v. A10 Networks, Inc.*, No. 10-3428 PSG, 2013 U.S. Dist. LEXIS 8113, at *34-36 (N.D. Cal. Jan. 10, 2013) (holding that the copying of 145 lines of copyrighted code provided substantial evidence that defendants actions exceeded merely *de minimis* copying of code).  Thus, based on this evidence alone, there is a high likelihood that Lilith will be successful on its copyright infringement claim.

But in addition to the evidence showing uCool's direct copying, there is also ample evidence that uCool had access to Lilith's valid copyrights, and that the two works at issue here are substantially similar. Access is established if "plaintiff shows that the defendant had an opportunity to view or to copy the plaintiff's work." *Meta-Film Assocs. v. MCA*, 586 F. Supp. 1346, 1355 (C.D. Cal. 1984).  "Circumstantial evidence of reasonable access is proven in one of two ways:  (1) a particular chain of events is established between the plaintiff's work and the defendants access to that work (such as dealings with a publisher or a record company), or (2) the plaintiff's work has been widely disseminated." *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 482 (9th Cir. 2000).

Here, uCool had the requisite access to Lilith's copyrighted works.  To show that this element is satisfied, the Court need look no further than the fact that Lilith's copyright declaration is found in uCool's own game.  Yang Decl. ¶ 12; Rankin Decl. ¶ 5, Ex. 4; Ray Decl. ¶¶ 11(n) and (p). For that to be in uCool's game, uCool must have accessed Lilith's code.

Additionally, uCool had the opportunity to download Sword and Tower and access the code in that manner.  Lilith's game has been widely disseminated since its release in February 2014.  By May 2014, Sword and Tower was named as China's top grossing iOS game, and by August 2014, Sword and Tower had become the number one game in all of Asia.  Wang Decl. ¶ 5.  As of March 2015, the game has been downloaded over 29 million times through one distribution channel alone.  *Id.*  Indeed, as set forth above, Sword and Tower has been consistently ranked as one of the top games in China, both in number of downloads and revenue, since its release.  Hu Decl. ¶ 4, Ex. B.  Moreover, uCool, as a direct competitor of Lilith, and active participant in the mobile game industry, was undoubtedly aware of Sword and Tower and its success.  Thus, for purposes of this inquiry, Lilith will be able to show that uCool, at a minimum, had access to and the opportunity to copy

16

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
Tel: 1 415 576 3000

CASE NO. 15-cv-01267-SC
PLTF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMO OF P&A IN SUPPORT

Lilith's copyright protected computer software.

In addition to having access, there is a substantial similarity between Lilith's Sword and Tower and uCool's Heroes Charge. In particular, to show that an infringing work is substantially similar, the copyright owner, under 9th Circuit law, must satisfy both an extrinsic and intrinsic test. *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1442 (9th Cir. 1994). The extrinsic test considers the objective similarities between the ideas inherent in the copyrighted work, and the way the work expresses those ideas. *Id.* The intrinsic test, on the other hand, is a subjective comparison seen through the eyes of a common observer and focuses on the "total concept and feel" of the two works. *Id.*

Under the extrinsic test, a video game can be analyzed much like a literary work, where the court considers the expressive elements of the plot, theme, mood, setting, pace, and character. *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1476 (9th Cir. 1992); *Spry Fox, LLC v. Lolapps, Inc.*, No. C 12-147 RAJ, 2012 U.S. Dist. LEXIS 153863, at *14 (W.D. Wash. Sep. 18, 2012). There are hundreds if not thousands of ways to depict the idea of a hero battling different enemies in various stages of a video game, and receiving rewards in exchange for victories. But Lilith's expression of those ideas through its plot, theme, mood, setting, pace, characters, and the originally authored source code bringing those things to life are all original to Sword and Tower. Lilith, in fact, owns a valid Chinese registered copyright in the source code written by Lilith's employees in Lua and embodied in Sword and Tower. Wang Decl. ¶¶ 3-4, Ex. A; Yang Decl. ¶¶ 3-11 and 13, Ex. A; Zhang Decl. ¶¶ 3-7; s*ee JCW Invs., Inc. v. Novelty, Inc.*, 482 F.3d 910, 916-917 (7th Cir. 2007). In dissecting the various components of the two games, it is clear that uCool's expression in Heroes Charge is identical to the copyrighted expression contained in Sword and Tower. Yang Decl. ¶ 13, Ex. A. The computer software owned and protected by Lilith, is expressive in the way it was written to present to the player Lilith's unique creations. When looking at the screens depicting Sword and Tower and the screens depicting Heroes Charge, they are virtual replicas. Yang Decl. ¶¶ 3-13, Ex. A. Attached to the Yang Declaration is just a sampling of the screen shots taken from the two games, which reveals a virtually identical resemblance in the protected features, software, and the "total concept and feel" of Lilith's original works. Yang Decl.

17

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
Tel: 1 415 576 3000

CASE NO. 15-cv-01267-SC
PLTF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMO OF P&A IN SUPPORT

¶ 13, Ex. A.  In fact, the games are similar in every conceivable way.  *See Spry Fox LLC*, 2012 U.S. Dist. LEXIS 153863, at *14 (holding that when considering the extrinsic test, courts must consider what is similar, not what is different when comparing the two works.)  Stated differently, uCool has not in any way created an independent form of expressing the ideas underlying Sword and Tower, but rather, uCool has unlawfully appropriated Lilith's own unique forms of expression.  Further, the mechanics of the games are the same.  *See e.g.*, Yang Decl. ¶¶ 6 & 11.  For example, the animation movements for the characters, the animation of the attached and defeated characters, the promotion or strength mechanics for the characters, and auto-fight capabilities all operate in the same way across the two games.  *See Id.* ¶¶ 3-11.  Again, Lilith's own copyright declaration embedded in Lilith's source code was found in uCool's Heroes Charge.  Yang Decl. ¶ 12; Ray Decl. ¶ 11.  The only plausible explanation for the substantial similarities between these two games is that uCool has copied Lilith's copyrighted software code.  Wang Decl. ¶ 8, Ex. A; Yang Decl. ¶ 12; Ray Decl. ¶ 11; *see Cybermedia Inc. v. Symantec Corp.*, 198 F. Supp. 2d 1070, 1077-78 (N.D. Cal. 1998).

Further, while uCool may attempt to argue that its characters or outward appearance of certain screens contain minor variations, (Rankin Decl., ¶¶ 3-4, Exs. 2 and 3), such variations cannot excuse uCool's blatant copying.  Wang Decl. ¶ 8, Ex. A; Yang Decl. ¶ 12; Ray Decl. ¶ 11.  As one district court aptly stated, "a writer who appropriates the plot of *Gone with the Wind* cannot avoid copyright infringement by naming its male protagonist 'Brett Cutler' and making him an Alaskan gold minor instead of a southern gentleman."  *Spry Fox, LLC*, 2012 U.S. Dist. LEXIS 153863, at *18.  Similarly, here, uCool cannot avoid its copyright infringement by changing a character's name or making minor inconsequential changes to the outward appearance of the game.  *See Shaw v. Lindheim*, 919 F.2d 1353, 1362 (9th Cir. 1990) ("No plagiarist can excuse the wrong by showing how much of his work he did not pirate.")  As a result, Lilith can easily satisfy the copying element of its copyright infringement claim, and for at least the reasons stated herein, Lilith will, in fact, succeed on the merits.  *See Brown Bag Software v. Symantec Corp.*, 960 F.2d at 1476.

> **2.** **In view of uCool's blatant usage of Lilith's software code, Lilith is also likely to succeed on its trade secret misappropriation claim.**

Under California law, a trade secret is defined as something, such as source code, that (1)

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
Tel: 1 415 576 3000

derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.   Cal. Civil Code § 3426.1 (2015).   A party misappropriates another's trade secret if either (1) or (2) below is established.

> (1) Acquisition of a trade secret by a person who knows or has reason to know that the trade secret was acquired by improper means;  or
> (2) Disclosure or use of a trade secret of another without express or implied consent by a person who:
>> (A) Used improper means to acquire knowledge of the trade secret;  or
>> (B) At the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was:
>>> (i) Derived from or through a person who had utilized improper means to acquire it;
>>> (ii) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use;  or
>>> (iii) Derived from or through a person who owned a duty to the person seeking relief to maintain its secrecy or limit its use;  or
>> (C) Before a material change of his or her position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

Cal. Civil Code § 3426.1(b).   Under the facts of this case, uCool has misappropriated Lilith's trade secret under both (1) and (2) above.

Here, without the software code originally authored in Lua by Lilith, there would be no Sword and Tower.   Further, it cannot be questioned that Lilith derives independent economic value from Sword and Tower and by extension its protected source code.   *See* Hu Decl. ¶ 4.   Lilith's software code is also subject to more than reasonable efforts to maintain its secrecy.   Zhang Decl. ¶¶ 5-8.

As set forth above, the code has at all times been maintained on a password protected system called P4.   *Id.* ¶ 8.   The only persons able to access the P4 system are the employees that have been given employee-specific credentials.   *Id.*   And all of the employees that have been given a password to access the code, of which there have only been 21, they have at all times been under an obligation

19

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
Tel: 1 415 576 3000

CASE NO. 15-cv-01267-SC
PLTF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMO OF P&A IN SUPPORT

to maintain the code as Lilith's confidential proprietary information. *Id.* ¶¶ 5-8. Indeed, Lilith requires its employees to sign confidentiality agreements making clear that, among other things, the source code shall not be disclosed to any third parties. *Id.* This, Lilith's source code unquestionably qualifies as a trade secret. *See* Cal. Civil Code § 3426.

As evidenced by the steps Lilith takes to keep its source code confidential, it is well known in the game development industry that a company's originally authored source code is their trade secret. uCool cannot credibly argue otherwise. Accordingly, uCool knew or certainly should have known that Lilith's code constituted a trade secret, but for all of the reasons set forth above, uCool both acquired and used Lilith's trade secret nonetheless. *See* Wang Decl. ¶ 8, Ex. A; Yang Decl. ¶ 12; Ray Decl. ¶ 11. Further, Lilith did not in any way consent to uCool's use of its source code embodied in Sword and Tower. *See* Zhang Decl. ¶¶ 5-8. Thus, uCool must have acquired that code through improper means, likely through electronic espionage. *See* Cal. Civil Code § 3426.1(a). Accordingly, the elements of § 3426 are satisfied in this matter, and there is a high likelihood that Lilith will succeed on its trade secret misappropriation claim.

### 3. Lilith will suffer irreparable harm if an injunction is not granted.

Intangible injuries, such as damage to a plaintiff's reputation, good will, and business relationships are the type of injury that constitutes irreparable harm. *Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991); *Rovio Entm't Ltd*, 2012 U.S. Dist. LEXIS 169020, at *29-30. This is especially true in matters involving two competitors, as is the case here. *Rovio Entm't Ltd*, 2012 U.S. Dist. LEXIS 169020, at *29-30; *Flextronics Int'l Ltd*, 2013 U.S. Dist. LEXIS 133403, at *22-23. In particular, while Lilith is a relatively young company, it has expended great effort and resources to obtain a reputation as a reputable game developer. Wang Decl. ¶¶ 2-5. As a result of uCool's unlawful conduct, however, Lilith has already suffered damage to its reputation and good will as evidenced by user comments actually accusing Lilith of copying Heroes Charge. Wang Decl. ¶ 8, Ex. B. For example, in March 2015, Lilith released Sword and Tower in certain European countries where Heroes Charge had already been released. The

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
Tel: 1 415 576 3000

following is indicative of the comments users have posted in publicly available forums, claiming that Lilith plagiarized Heroes Charge:



Wang Decl. ¶ 8, Ex. B.  As long as uCool is permitted to continue to advertise and make Heroes Charge available to the public, including in the United States, this confusion and damage to Lilith's reputation will continue—damages that cannot be quantified or cured absent an injunction.

Lilith will also continue to suffer irreparable harm in its business relationships with distributors who have contracted with Lilith to release Sword and Tower.  For example, Lilith has entered into exclusive distribution agreements with a number of different entities, granting them the right to distribute Sword and Tower in Europe, Southeast Asia, Korea and Japan.  Wang Decl. ¶ 6. In other words, as of March 2015, Lilith is and will be competing the same markets where uCool markets Heroes Charge.  *See Id.* ¶ 8.  uCool's infringement and misappropriation causes irreparable harm to Lilith, however, because it essentially deprives Lilith's distributors of the exclusive right to market Lilith's Sword and Tower in their given geographic area.  *Id.* ¶ 9.  Those distributors have expressed their displeasure about uCool's unlawful conduct and have put pressure on Lilith to seek to enjoin those activities.  *Id.*  uCool's unlawful conduct has also prevented Lilith from obtaining an exclusive distributor in the United States.  *Id.*  Lilith's efforts to reach such an arrangement have been thwarted because uCool's infringement and misappropriation in the United States precludes any real exclusivity that Lilith can offer.  *Id.*  Exclusive distribution agreements are Lilith's preferred method of release, and without such an arrangement Lilith, a relatively young entity, is not able to effectively release Sword and Tower on its own.  *Id.*  Further, those distributors, as well as Lilith, are being deprived of the ability to obtain new users and build relationships with the applicable market, rights that Lilith would have, but for uCool's infringement.  *Rovio Entm't Ltd v. Royal Plush Toys, Inc.*, 2012 U.S. Dist. LEXIS 169020, at *32-33.  This is especially true in Lilith's case where it does

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
Tel: 1 415 576 3000

not have an established presence or customer base in these markets, including the United States. Because those types of damages cannot be quantified or otherwise remedied, Lilith will suffer irreparable harm if uCool is not enjoined.

Contrary to an anticipated argument from uCool, Lilith has not unreasonably delayed in seeking a preliminary injunction. Rather, Lilith has taken the appropriate time to obtain evidence supporting the fact that it is and will continue to suffer irreparable harm, as well as properly investigate the causes of action giving rise to this lawsuit. This is a practice that has been widely endorsed, and when employed, does not in any way defeat the irreparable harm element. *Tom Dougherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 39 (2d Cir. 1995); *Cybermedia, Inc.*, 19 F. Supp. 2d at 1078.

For example, in *Cybermedia, Inc.*, the defendant argued that Cybermedia could not show irreparable harm because it waited three months from the date it first suspected copyright infringement to file a lawsuit and another three months after suit was brought to file a motion for preliminary injunction. *Cybermedia, Inc.*, 19 F. Supp. 2d at 1078. In response, Cybermedia explained that it took three months to investigate the validity of its claims and to determine whether to engage in costly litigation. *Id.* Cybermedia further argued that the three-month gap between filing suit and seeking injunctive relief was to allow it adequate time to conduct discovery in support of that request. *Id.* The Court held that, in view of that, Cybermedia did not unduly delay, and that the irreparable harm element was satisfied. *Id.*

The same result is warranted here. While it is true that Lilith first learned of uCool's unlawful activity in August 2014, Lilith made the determination to first attempt to resolve that dispute by issuing a take-down notice to Apple. Hu Decl. ¶ 3, Ex. A. The parties then exchanged correspondence through the end of November 2014, when those talks stalled without any action from Apple regarding the takedown request. Rankin Decl. ¶¶ 2-4, Exs. 1-3. Thus, Lilith was faced with the choice of continuing to pursue the correspondence with Apple and uCool or bring a lawsuit against uCool. It should be noted that Lilith is a small start-up entity, and the determination to become involved in costly litigation is not one that Lilith would make hastily.

Further, and perhaps more importantly, the evidence of irreparable harm cited above, did not

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
Tel: 1 415 576 3000

become apparent to Lilith until March 2015. Again, at the time Lilith first learned of uCool's infringement and misappropriation, Sword and Tower was only being made available in China. It was not until March 2015 that Lilith expanded to other markets where uCool had released Heroes Charge. *See* Wang Decl. ¶ 8. Once Lilith realized the harm to, among other things, its reputation in those markets, including the United States, Lilith conducted the evidence preservation exercise described above showing that Lilith's code was, in fact, contained in Lilith's game, and brought this lawsuit within a matter of weeks. *See id.*; (Pl.'s Compl. Of 3/18/15, ECF No. 1.) And in contrast to the three months it took Cybermedia to move for injunctive relief, which was deemed reasonable, Lilith filed its motion approximately two weeks after filing suit. (ECF No. 17.) Since that time, Lilith has been in constant negotiations with uCool's counsel in an effort to conduct limited discovery and present its preliminary injunction request to the Court for determination in a timely manner under the circumstances. Rankin Decl. ¶¶ 7-10, Exs. 6-9. Thus, the irreparable harm that has been and will continue to be suffered by Lilith is very real, and Lilith has in no way unreasonably delayed in seeking the relief requested herein. *See Cybermedia, Inc.*, 19 F. Supp. 2d at 1078.

### 4. The balance of equities between the parties and the public interest weigh in favor of granting an injunction.

Like the first two, the last two elements favor issuing an injunction in this matter. With respect to the balance of equities, a defendant's inability to continue to copy, market, or sell an infringing article does not preclude the issuance of an injunction. *Cadence Design Sys.*, 125 F.3d at 829 ("a defendant who knowingly infringes another's copyright cannot complain of the harm that will befall it when properly forced to desist from its infringing activities.") Further, the public, while not greatly impacted, has an interest in seeing the copyright laws enforced. *Flextronics Int'l Ltd.*, 2013 U.S. Dist. LEXIS 133403, at *28.

Here, uCool knowingly copied Lilith's protected source code. Indeed, as evidenced by the fact that Lilith's copyrighted declaration was embedded in uCool's game, there can be no legitimate dispute that uCool's Heroes Charge is riddled with Lilith's software code. Accordingly, uCool must

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
Tel: 1 415 576 3000

be enjoined from any further copying, selling, or distribution of that game in the United States. If such an injunction were to issue, as it should, the only harm that uCool could claim is the inability to further benefit from its unlawful conduct. That type of harm does nothing to tip the scales in uCool's favor, and as a result, these elements, like all of the others, counsel in a favor of granting the relief requested by Lilith.

## IV.     CONCLUSION

Lilith has obtained direct, undeniable evidence that uCool has misappropriated Lilith's trade secret and copied Lilith's copyrighted computer software extensively and passed it off as its own. This infringement and misappropriation is now hampering Lilith's ability to enter new markets, including the United States, and tarnishing Lilith's reputation as a game developer. uCool should be immediately enjoined from continuing to engage in these unlawful acts, and to the extent the Court determines that a bond is necessary, Lilith is prepared to post the appropriate security.

WHEREFORE, Lilith Games (Shanghai) Co. Ltd., respectfully requests that the Court grant this Motion for Preliminary Injunction in its entirety, enter an order enjoining uCool, Inc., and uCool Ltd. from any further misappropriation of Lilith's trade secret and/or infringement of Lilith's copyright that it validly holds in the source code authored by Lilith's employees and is embodied in Sword and Tower, including reproducing, copying, preparing any derivative works, and/or distributing any of Lilith's registered copyrights that are the subject of this motion, which necessarily includes Lilith's code that is now unlawfully contained in uCool's game Heroes Charge, and grant Lilith all other relief to which it is entitled.

Dated: May 5, 2015                                **BAKER & McKENZIE LLP**
                                                  Colin H. Murray
                                                  Teresa H. Michaud

                                                  **BAKER & McKENZIE LLP**
                                                  W. Barton Rankin

                                                  By:  /s/ Colin H. Murray
                                                  Colin H. Murray
                                                  Attorneys for Plaintiff

24

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
Tel: 1 415 576 3000

CASE NO. 15-cv-01267-SC
PLTF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMO OF P&A IN SUPPORT