# EXHIBIT 3

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

525 UNIVERSITY AVENUE
PALO ALTO, CALIFORNIA 94301
———
TEL: (650) 470-4500
FAX: (650) 470-4570
www.skadden.com

FIRM/AFFILIATE OFFICES
———
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEW YORK
WASHINGTON, D.C.
WILMINGTON
———
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SÃO PAULO
SHANGHAI
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

DIRECT DIAL
650-470-4560
DIRECT FAX
650-798-6513
EMAIL ADDRESS
DAVID.HANSEN@SKADDEN.COM

November 21, 2014

**By Email & First Class Mail**

Lisa Meyerhoff, Esq.
Baker & McKenzie LLP
Bank of America
700 Louisiana, Suite 3000
Houston, TX 77002-2871

RE:   <u>Lilith's Copyright Claim (Apple Reference No. APP39404)</u>

Dear Ms. Meyerhoff:

I write on behalf of our client, uCool, Inc. ("uCool"), in response to your November 10, 2014 letter to me (which you did not actually send until November 12) and your November 12 email to Apple, Inc. concerning claims made by your client, Lilith Games (Shanghai) Co., Ltd. ("Lilith"), regarding uCool's Heroes Charge App. This letter is written pursuant to Federal Rule of Evidence 408 and applicable state and foreign counterparts.

Your letter and email contain a number of statements suggesting that Lilith may have violated state and federal law, including the DMCA. For example, you state in your letter that:

> We previously advised that Lilith owns a China certificate of copyright registration for its software code for its [DOTA Legend] game. Lilith's software personnel examined uCool's software code for the Heroes Charge game and compared it with Lilith's copyright-registered code for its [DOTA Legend] game. The similarity between Lilith's registered software code and uCool's software code it [sic]

Lisa Meyerhoff, Esq.
November 21, 2014
Page 2

Heroes Charge game **exceeds 90%**. That level of software code similarity is intentional, not coincidental.

You similarly state in your email to Apple that:

Lilith software personnel have compared its copyright-registered software code of its game with uCool's software code for the Heroes Charge game. The similarities in code **exceed 90%**. That is not coincidental.

You do not provide any substantive support for your allegation and it is telling that you did not make this allegation in any of your prior communications with uCool or Apple. More importantly, you do not explain how Lilith obtained a copy of the software code for uCool's Heroes Charge game. uCool has not provided a copy of its code to Lilith and it has never authorized Lilith to obtain a copy.

This leaves only a few possibilities. One possibility is that Lilith somehow obtained a copy of uCool's code through some form of corporate espionage. The unlawfulness of such a course is manifest.

Another possibility is that Lilith obtained a copy of the code *via* the Heroes Charge App. This would involve a number of unlawful acts, including violation of the DMCA for circumventing the encryption that Apple applies to all of the Apps in its App Store. *See, e.g., Apple, Inc. v. Psystar Corp.*, 673 F. Supp. 2d 931, 940-42 (N.D. Cal. 2009), *aff'd* 658 F.3d 1150 (9th Cir. 2011) ("Section 1201(a)(1)(A) [of the DMCA] provides that no person shall circumvent a technological measure that effectively controls access to a work protected under this title. Psystar has used decryption software to obtain access to Mac OS X and to circumvent Apple's technological measure when modifying Mac OS X in its production process. This is a violation of the Section 1201 anti-circumvention provision of the DMCA. 17 U.S.C. 1201(a)(1)."). It also would involve unlawful circumvention of the encryption uCool separately applies to its Apps, including the Heroes Charge App, as well as a violation of uCool's prohibition against reverse engineering its code. *See, e.g., Bowers v. Baystate Techs.*, 320 F.3d 1317, 1323-28 (Fed. Cir. 2003) (affirming jury verdict based on violation of reverse engineering restriction in end user license agreement).

Another possibility is that Lilith did not actually analyze uCool's code and your allegations concerning the supposed "similarities" with Lilith's code are untrue. Under these circumstances, were Apple to follow Lilith's request to take down Heroes Charge from the App Store, Lilith might face liability under § 512(f) of the DMCA for knowing misrepresentations made in connection with its request.

Lisa Meyerhoff, Esq.
November 21, 2014
Page 3

In any event, uCool did not have access to Lilith's code and, as stated in our prior letter, uCool denies that it copied Lilith's code in connection with Heroes Charge. To put the lie to Lilith's allegations, uCool is willing to have an independent expert compare the code for Heroes Charge with the code for DOTA Legend under appropriate confidentiality protections. Please let us know if Lilith will agree to such a comparison.

You also disingenuously try to distance Lilith's "DOTA Legend" game from Blizzard Entertainment and Valve Software's DOTA and DOTA 2 games and Valve Software's trademark rights in "DOTA." You argue that uCool "incorrectly calls Lilith's game 'DOTA Legends,' implying that Lilith's game is a work associated with the DOTA game." You also argue that the "first two characters of the name of Lilith's game"—刀塔 (or "Dao Ta")—only "sound similar to the word 'DOTA.'"

But there is no reason for Lilith to use the Chinese characters 刀塔 other than their phonetic equivalent to the "DOTA" acronym, and there is no real question that Lilith selected these characters to associate its game with the DOTA games. For example, Lilith's game is commonly called "DOTA Legends. *See, e.g.,* "DOTA Legends steals Tencent's top grossing crown," http://www.pocketgamer.biz/asia/feature/59195/dota-legend-steals-tencents-crown/ ("The insurgent was DOTA Legend, which is developed by Lilith Games and published by Longtu Game…. An action-RPG with card elements, DOTA Legend is based on Valve's Defence of the Ancients[.]").

Lilith itself also refers to its game as "DOTA Legend." For example, in connection with a talk he gave recently at an industry conference on "Game&Fortune—Stroy [sic] Behind DOTA Legend," Ollir Zhang, a co-founder of and partner in Lilith, states that he "create[d] 'DOTA Legend' with my team." *See* http://www.chinagdc.com.cn/en/NewsDeltailedOther.aspx?ID=74&PID=17

Valve Software, the owner of the "DOTA" trademark, uses the 刀塔 symbols to refer to the Chinese version of its DOTA game:



*See* http://www.dota2.com.cn/  In fact, Valve has Chinese trademark registrations for "DOTA" and its phonetic Chinese equivalent 刀塔. *See* China Trademark Registration Nos. 8882059, 9114388 & 12022845.

Lisa Meyerhoff, Esq.
November 21, 2014
Page 4

Thus, your assertion that "UCool's effort to connect Lilith's copyrighted game and Blizzard's game is meritless" is obviously incorrect. Lilith's DOTA Legends game is clearly derivative of Blizzard and Valve's DOTA games and, as discussed in our prior letter, Lilith's game and its characters are based on the DOTA games and other stock features associated with games of this sort. Some illustrations of the similarities between DOTA and Lilith's DOTA Legends game are shown in the attached Exhibit A.

Finally, uCool does not believe that it is violating any legitimate copyrights of Lilith and Lilith's take down request is therefore improper. uCool also believes that Lilith's continued request that Apple take down Heroes Charge from the App Store is improper because the information uCool has been provided does not show that Lilith has complied with the strict notice and takedown provisions of the DMCA. Moreover, even if it had, under § 512(g)(2)(C) of the DMCA removal of Heroes Charge from the App Store was only appropriate if Lilith filed suit within fourteen days of uCool's counter to Lilith's notice. *See, e.g., Vernor v. Autodesk, Inc.*, 621 F.3d 1102, 1106 n. 4 (9th Cir. 2010) ("After receiving a counter-notification, the service provider must … timely replace the removed material or cease disabling access to it, unless the person who provided the take-down notice gives notice that he or she has filed a court action to restrain the user's infringement."); *Football Ass'n Premier League v. Youtube, Inc.*, 297 F.R.D. 64, 68 (S.D.N.Y. 2013) (the DMCA "contemplates reposting 10-14 days after the subscriber who posted it objects to its removal, unless litigation has been started"); *Online Policy Group v. Diebold, Inc.*, 337 F. Supp. 2d 1195, 1201-02 (N.D. Cal. 2004) ("Upon counter-notice of noninfringement by an ISP subscriber, the ISP may reestablish access to the content without fear of liability. Such replacement generally must be performed within approximately fourteen days.").

Very truly yours,

David W. Hansen

Attachment

cc:     Apple, Inc.

**EXHIBIT A**

**COMPARISION OF "DOTA" WITH LILITH'S "DOTA LEGENDS"**

| DOTA | "DOTA LEGENDS" |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |