# EXHIBIT 7

| From: | Claude M. Stern <claudestern@quinnemanuel.com> |
|---|---|
| Sent: | Friday, April 10, 2015 11:37 AM |
| To: | Rankin, Bart; von Seeburg, Christine |
| Cc: | Claude M. Stern; Evette Pennypacker; Sara Jenkins; Derek Tang; Michael LaFond; Murray, Colin H.; Michaud, Teresa H; Hitti, Nada K; Wilkes, Nathaniel |
| Subject: | RE: Lilith Games  v uCool - Receipt |
| Attachments: | 11-12-14 attachment to email.pdf; 11-18-14 attachment to email.pdf |

Bart, please let me know when you would like to discuss. I am available all day, but we need to get this hammered out today.

My general view is that your schedule is unreasonably plaintiff-friendly and court-unfriendly in a number of obvious respects.

- First, we cannot agree to a schedule that allows us to get blindsided before a PI hearing with new evidence.  Under your schedule, you have us filing an opposition to your current PI motion, with you having what is essentially unfettered license to file new matter as part of a "supplement" before the hearing.  This is too much a recipe for mischief.  You should have either included all of your evidence in your moving papers, or offer to refile the motion with all of your relied-on evidence.  We will object to any new evidence in any Lilith reply.

- Second, I think Judge Conti would find it objectionable, as would we, to have new materials submitted a scant two days before a hearing (or new evidence on a reply).  Plus, your time for expert depositions is too limited from the dates that  their respective reports are provided.

- Third, your schedule allows you to have experts submission and review of our client's code, and our client has no such review of your client's code.  With all due respect, you must be kidding.

As I mentioned to Colin, I suggest that discovery, if it is to proceed at all, be on this schedule and that the briefing be modified as per the schedule below (if we push out the hearing date, which I think you may want to consider, then these dates can move to allow more time for the identified tasks):

- April 15:  Lilith identifies its trade secrets with particularity.

- April 22 to May 8:  Assuming compliance with April 15 requirement, parties conduct agreed-upon discovery, expert reports are provided and depositions of each side's expert.

- May 15: Lilith files its new motion for preliminary injunction with expert testimony

- May 29:  uCool Opposition to Lilith's re-filed Motion for Preliminary Injunction.

- June 5: Lilith reply

- June 12: Hearing on PI Motion

If there were to be no discovery and no re-filed Lilith preliminary injunction motion, then we would request the following schedule:

- May 29: uCool Opposition to Lilith's refiled Motion for Preliminary Injunction.

- June 5: Lilith reply (no new matter)

- June 12: Hearing on PI Motion

As for discovery requested by Lilith, we should discuss your request. I see two immediate problems:

- The first is that your client has now pled a trade secret misappropriation claim. Under CCP section 2019.210, your client are not allowed to conduct discovery unless and until you identify the trade secret that your client contends were misappropriated "with particularity."

  o The Northern District of California strictly adheres to this rule for trade secret cases, whether asserted in federal question cases (for example, where copyright infringement is an associated claim) or diversity cases (where there is no federal claim). *Soc. Apps, LLC v. Zynga, Inc.*, 11-CV-04910, 2012 WL 2203063, at 1-2 (N.D. Cal. 2012). Courts that have addressed the issue in this District have found, expressly or impliedly, that § 2019.210 applies to constrain a trade secret plaintiff from taking discovery prior to disclosing its trade secrets with reasonable particularity. *See, e.g., Jobscience, Inc. v. CVPartners, Inc.* (*JobScience I*), No. C 13-04519 WHA, 2014 WL 852477, at *5 (N.D. Cal. Feb. 28, 2014) (proscribing in trade secret cases the "old trick of vague pleading with the blanks to be artfully filled in only after discovery"); *M.A. Mobile LTD. v. Indian Inst. of Tech. Kharagpur*, C08-02658 RMW HRL, 2010 WL 3490209 (N.D. Cal. Sept. 3, 2010) (San Jose division) (Lloyd, J.); *Art of Living Found. v. Does*, No. 10-CV-05022-LHK, 2011 WL 2441898 (N.D. Cal. June 15, 2011); *Jobscience, Inc. v. CVPartners, Inc.* ("*JobScience II*"), No. C 13-04519 WHA, 2014 WL 1724763, at *2 (N.D. Cal. May 1, 2014).

  o And this rule applies to limit all discovery by the plaintiff, even on claims other than the asserted trade secret claims. For example, in the *Advanced Modular* case, the court held that an inadequate § 2019.210 statement bars all discovery in the "action" and specifically noted that "reasonable particularity" in the context of a highly technical and specialized field means the plaintiff must "distinguish the alleged trade secrets from matters already known to persons skilled in that field." *Adv. Mod. Sputtering, Inc. v. Sup. Ct.*, 132 Cal.App.4th 826, 908. Likewise, in the *Brescia* case, the court held that in appropriate cases (*i.e.*, involving a highly technical field) a more exacting level of particularity applies. *Brescia v. Angelin*, 90 Cal. Rptr. 3d at 851-53.

  o More important, we have received orders from our NDCal judges, even recently, where they require that, where source code is claimed to be the trade secret, *the specific lines of code that are identified as trade secrets first be identified*. *See Social Apps*, 2012 WL 2203063, at *3 (identification of "three broad categories", including "computer source code" held inadequate under § 2019.210). See also *Perlan Therapeutics, Inc. v. Superior* Court, 178 Cal. App. 4th 1333, 1344 (2009) ("[I]n a typical case, the plaintiff ... provide[s] little more than a list of high-level, generic categories in which its alleged secrets are said to reside."). A plaintiff cannot "hid[e] its trade secrets in 'plain sight' by including surplusage and voluminous attachments in its trade secret statement," nor can it refuse to provide a finite list merely because it

alleges Defendants stole "massive number of trade secrets spanning thousands of files." *Perlan,* at 1350; *Brescia,* at 845 (plaintiff's initial description was inadequate "because, by citing to voluminous documents, it obscured rather refined the description").

o   Even more relevantly, Judge Conti has expressly required strict compliance with section 2019.210 (formerly 2019(d)) in a case prior to a preliminary injunction hearing.  See, e.g.,  Loveland Industries, Inc dba UAP West v. Wilbur-Ellis Company, Case No. C 05-0840-SC ("ORDER AFFIRMING AND CLARIFYING THIS COURT'S APRIL 22,2005 ORDER AND GRANTING PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER").   As Judge Conti ruled:

> To the Court's knowledge, Plaintiff attempted to meet its 2019(d) obligations
> through a single document describing various computer files. Although the threshold requirements of section 2019(d) are minimal, more is required of Plaintiff than a description of various computer files. See Excelligence Learning Corp. v. Oriental Trading Co., 2004 WL 2452834 *4 (N.D. Cal. 2004). In
> essence, what section 2019(d) requires is that Plaintiff inform
> Defendants of the proprietary information that differs from other
> publicly available information or data commonly known to those in
> the trade. Plaintiff may meet its burden by demonstrating where
> was certain data was developed exclusively by Plaintiff for the
> benefit of its business, how such data is materially different from other publicly available data or data commonly known in the
> trade, and how Plaintiff sought to keep that information  confidential.

• The second problem is that your firm and your client have twice (see attached) made public representations indicating that your firm and your client have copies of our client's source code.  Your firm twice wrote Apple, representing:

> "The similarity between Lilith's registered software code and uCool's software code . . . exceeds 90%.  That level of software code similarity is intentional, not accidental."

Frankly, if in fact your client and your firm have our client's code (and we assume your firm would not make such statements falsely), this possession is unlawful and actionable, but more relevant to this scheduling issue, makes your request for an additional provision of code unnecessary.   If the twice-made representations were and are false, this raises serious questions regarding the propriety of our client providing such code to your firm and your

client. At a minimum, we believe the court should be apprised of this dissonance when it considers your client's request for a copy of our client's code.

As for discovery that uCool would request (assuming discovery is allowed or agreed-to before the PI hearng), uCool would seek from Lilith:

- All Lilith game code since the game's release (each version of Dota Legend/Soul Clash/Sword and Tower)
- The agreements with any contractors or non-employees for development of any aspect (art, code, other) of Dota Legend/Soul Clash/Sword and Tower
- All communications between Lilith and Blizzard or related to the Blizzard trademark, copyright or other proceedings (or threat of same) in Taiwan or elsewhere

Please let me know when you are available to discuss. I am free now until noon and from 1 to 4 pm.

Regards,
 Claude

Claude M. Stern
Co-Chair, National Intellectual Property Litigation Practice
Quinn Emanuel Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Direct: (650) 801-5002
Main Phone: (650) 801-5000
Main Fax: (650) 801-5100
Mobile: (650) 400-5319
E-mail: claudestern@quinnemanuel.com
Web: www.quinnemanuel.com





The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the

intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

**From:** Rankin, Bart [mailto:W.Rankin@bakermckenzie.com]
**Sent:** Friday, April 10, 2015 8:50 AM
**To:** Claude M. Stern; von Seeburg, Christine
**Cc:** Evette Pennypacker; Derek Tang; Michael LaFond; Murray, Colin H.; Michaud, Teresa H; Hitti, Nada K; Wilkes, Nathaniel
**Subject:** RE: Lilith Games v uCool - Receipt

Claude,

Pursuant to our previous discussions, I have set forth below a proposed schedule for the above-referenced matter that would essentially take the parties up to the current hearing date of June 12. I understand that you spoke with Colin yesterday evening and may have a different schedule in mind. Accordingly, after you have had a chance to review this e-mail, we can be generally available today to discuss how best to proceed and whether this or some modified schedule can be agreed upon. Also, I spoke to Lilith about engaging in discussions to determine if a resolution to this dispute was possible, and I can give you an update on the same at your convenience.

April 17 – To the extent your client is agreeable to engaging in limited discovery at this point. Lilith essentially has the following two requests: (1) Receive a true and correct copy of the computer software code embodied in Heroes Charge as it existed on March 1, 2015, accompanied by a sworn declaration attesting to the same; and (2) to the extent any changes have been made to the computer software code embodied in Heroes Charge, including any hot fixes, since March 1, 2015, Lilith requests that uCool identify the changes that were made, the date the changes were made, and the reasons for the change(s). Again, Lilith would request that this information be provided in a sworn declaration or verified interrogatory response. With respect to this discovery, I appreciate that your client will likely want a protective order in place, and we are happy to work with you on the appropriate language.

April 27 – uCool files its Answer to Lilith's First Amended Complaint;

May 4 – uCool files its response to Lilith's Motion for a Preliminary Injunction;

May 11 – Lilith files its reply in support of its Motion for Preliminary Injunction;

May 22 – Lilith to serve any report/expert opinion concerning the computer software code received from uCool;

June 5 – Complete deposition, if necessary, of any expert providing an opinion/report on May 22;

June 10 – File any supplemental briefing with the Court based on any expert opinion/report and deposition; and

June 12 – Conduct Preliminary Injunction Hearing.

I appreciate that, while your client has not agreed to exchange discovery, you indicated in your discussion with Colin that it would be your preference that any limited discovery be conducted in the near term, and that Lilith would renew its preliminary injunction motion such that the parties would brief the issue with the benefit of that discovery. Again, we are happy to have a discussion in an effort to work out an agreeable schedule, and hopefully the foregoing will kick start the same.

Thank you and best regards,

Bart

Bart Rankin
Baker & McKenzie LLP | Partner
2300 Trammell Crow Center
2001 Ross Avenue
Dallas, Texas 75201
Tel: +1 214 978 3031
Fax: +1 214 978 3099
bart.rankin@bakermckenzie.com

BAKER & MºKENZIE

GLOBAL LAW FIRM OF THE YEAR:
**INTELLECTUAL PROPERTY**
CHAMBERS 2013 AND 2014

**From:** Claude M. Stern [mailto:claudestern@quinnemanuel.com]
**Sent:** Wednesday, April 08, 2015 6:16 PM
**To:** von Seeburg, Christine
**Cc:** Evette Pennypacker; Derek Tang; Michael LaFond; Murray, Colin H.; Rankin, Bart; Michaud, Teresa H; Hitti, Nada K; Wilkes, Nathaniel; Claude M. Stern
**Subject:** RE: Lilith Games v uCool - Receipt

Thanks so much, Christine. Have a good afternoon.
Regards,
 Claude

**From:** von Seeburg, Christine [mailto:Christine.vonSeeburg@bakermckenzie.com]
**Sent:** Wednesday, April 08, 2015 3:36 PM
**To:** Claude M. Stern
**Cc:** Evette Pennypacker; Derek Tang; Michael LaFond; Murray, Colin H.; Rankin, Bart; Michaud, Teresa H; Hitti, Nada K; Wilkes, Nathaniel; von Seeburg, Christine
**Subject:** RE: Lilith Games v uCool - Receipt

Mr. Stern:

Thank you. We will make a note.

Kind regards,
Christine

This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message. Please visit www.bakermckenzie.com/disclaimers for other important information concerning this message.

**From:** Claude M. Stern [mailto:claudestern@quinnemanuel.com]
**Sent:** Wednesday, April 08, 2015 3:29 PM
**To:** von Seeburg, Christine
**Cc:** Claude M. Stern; Evette Pennypacker; Derek Tang; Michael LaFond
**Subject:** RE: Lilith Games v uCool - Receipt

Christine, thank you.
Please make sure your team cc's all emails in this case to me and to my team, which is cc'd on this email.

Regards,
Claude

Claude M. Stern
Co-Chair, National Intellectual Property Litigation Practice
Quinn Emanuel Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Direct: (650) 801-5002
Main Phone: (650) 801-5000
Main Fax: (650) 801-5100
Mobile: (650) 400-5319
E-mail: claudestern@quinnemanuel.com

---

**From:** von Seeburg, Christine [mailto:Christine.vonSeeburg@bakermckenzie.com]
**Sent:** Wednesday, April 08, 2015 2:14 PM
**To:** Claude M. Stern
**Subject:** Lilith Games v uCool - Receipt

Dear Mr. Stern:

Can you kindly confirm you were able to open and download the Hightail email I just sent to you, which included the First Amended Complaint in the attachments?

Many thanks,

Christine von Seeburg
Assistant to Colin H. Murray, Teresa H. Michaud and Christina M. Wong
Litigation Department
Baker & McKenzie LLP
Two Embarcadero Center, 11th Floor
San Francisco, California 94111-3802, USA
Tel: + 1 415 576 3057
Fax: +1 415 576 3099
christine.vonseeburg@bakermckenzie.com

Baker & McKenzie LLP is a member of Baker & McKenzie International, a Swiss Verein.

 Please consider the environment before you print this email.

**BAKER & McKENZIE**

**Baker & McKenzie LLP**

Bank of America
700 Louisiana, Suite 3000
Houston, TX 77002-2871
United States

Tel: +1 713 427 5000
Fax: +1 713 427 5099
www.bakermckenzie.com

Asia Pacific
Bangkok
Beijing
Hanoi
Ho Chi Minh City
Hong Kong
Jakarta*
Kuala Lumpur*
Manila*
Melbourne
Shanghai
Singapore
Sydney
Taipei
Tokyo

Europe, Middle East
& Africa
Abu Dhabi
Almaty
Amsterdam
Antwerp
Bahrain
Baku
Barcelona
Berlin
Brussels
Budapest
Cairo
Casablanca
Doha
Dusseldorf
Frankfurt/Main
Geneva
Istanbul
Johannesburg
Kyiv
London
Luxembourg
Madrid
Milan
Moscow
Munich
Paris
Prague
Riyadh
Rome
St. Petersburg
Stockholm
Vienna
Warsaw
Zurich

Latin America
Bogota
Brasilia*
Buenos Aires
Caracas
Guadalajara
Juarez
Mexico City
Monterrey
Porto Alegre*
Rio de Janeiro*
Santiago
Sao Paulo*
Tijuana
Valencia

North America
Chicago
Dallas
Houston
Miami
New York
Palo Alto
San Francisco
Toronto
Washington, DC

* Associated Firm

**SUBJECT TO FED. R. EVID. 408**

November 10, 2014

Our ref:   32295916-000001

David W. Hansen, Esq.
Skadden, Arps, Slate, Meagher & Flom, LLP
525 University Avenue
Palo Alto, CA 94301

**By email**
david.hansen@skadden.com

**uCool's Violations of Lilith's Copyrights**

Dear Mr. Hansen,

We received your October 24, 2014 letter and have discussed it with Lilith Games ("Lilith"). For multiple reasons, some of which are discussed below, we find your client's explanation/position entirely unpersuasive regarding Lilith's copyright infringement claims against uCool's Heroes Charge game.

Your letter cites a few U.S. cases for the proposition that U.S. copyright law does not apply outside of the United States. Your letter fails to address application of the Berne Convention to this dispute. As you know, the Berne Convention gives foreign copyright owners protection for their rights and interests in their copyrighted works in hundreds of other signatory countries. Specifically, the Berne Convention requires signatories of the Convention to recognize the copyrights of works of authors from other signatory countries in the same way the signatory country recognizes the copyrights of its own citizens. As you also know, both the United States and China are signatories to the Berne Convention.

We previously advised that Lilith owns a China certificate of copyright registration for its software code for its game. Lilith's software personnel examined uCool's software code for the Heroes Charge game and compared it with Lilith's copyright-registered code for its game. The similarity between Lilith's registered software code and uCool's software code its Heroes Charge game **exceeds 90%**. That level of software code similarity is intentional, not coincidental.

Your letter alleges that Lilith is not the copyright owner of the game in dispute. That is incorrect. The China certificate of copyright registration states that the author is an individual named "Li Hongan", and clearly states that Lilith is the owner of the copyright in the game. We also note that Li Hongan is an employee of Lilith (the copyright owner). Thus, UCool's challenge to Lilith's copyright ownership of its game fails.

Your letter incorrectly calls Lilith's game "DOTA Legends." That is not the name of Lilith's game. Your letter also alleges that Lilith's copyrighted game is a derivative work

of the DOTA and DOTA 2 games.  Lilith's game is not a derivative work of any game, including **Blizzard's** DOTA and DOTA 2 games.  UCool's effort to connect Lilith's copyrighted game and Blizzard's game is meritless.  Specifically, uCool incorrectly calls Lilith's game "DOTA Legends", implying that Lilith's game is a work associated with the DOTA game.  The name of Lilith's game in Chinese characters is "刀塔传奇 / Dao Ta Chuan Qi.  The first two characters of the name of Lilith's game may sound similar to the word "DOTA," but those two characters are not the complete or official name of Lilith's game.

Your letter also argues that characters in Lilith's copyrighted game are the same or similar to characters in the DOTA and DOTA 2 games.  Lilith's game characters' appearances/expressions are very different from the characters' appearances/expressions in the DOTA and DOTA 2 games.  As you know, copyright law focuses on expressions of ideas, not the ideas themselves.  Accordingly, any alleged similarity between Lilith's and Blizzards' ideas for characters in their respective games is irrelevant to the dispute between Lilith and uCool regarding the expressions of character ideas in Lilith's and uCool's games.  As noted in our previous communications, Lilith owns China copyright registrations for the **expressions** (images) of more than 80 character designs in its game.

Your letter notes that Lilith must have been analyzing a beta-test version of uCool's Heroes Charge game, that uCool recently revised the beta-test version of its game, and that the revised images in the Heroes Charge game are "significantly different" from the character images in Lilith's copyrighted game.  We and our client reviewed various revised character images in the Heroes Charge game. There are many expressions/images of characters in uCool's Heroes Charge game that are much more relevant to Lilith's copyright infringement claims than uCool's  revisions listed in your letter.  Attached are screenshot comparisons between Lilith 's copyright-registered character expressions in its game and uCool's character expressions in the revised version of uCool's Heroes Charge game. They show substantially similar, if not identical, images.

Your letter also alleges that Lilith's game contains stock features like those in the DOTA (and other) games, and that stock features are not protectable under copyright law.  Lilith's game does not contain stock features from DOTA or other games.  Rather, Lilith's game contains protectable expressions of ideas that are registered under China copyright law.

In addition, the play of Lilith's copyrighted game and the play of the DOTA game are completely unrelated.  In contrast, uCool's Heroes Charge game copied virtually all play (including details of the play) from Lilith's copyrighted game.  Further, all software code of Lilith's game is original code and unrelated to the software code in the DOTA and other games.  As noted above, 90% of the software code in uCool's Heroes Charge game is quite similar to Lilith's copyright-registered software code for its game.

**BAKER & McKENZIE**

In summary, Lilith maintains its claims of copyright infringement by uCool's Heroes game, and will not withdraw its request that Apple's takedown department remove the Heroes Charge game from the App Store.

Very truly yours,

Lisa Meyerhoff
Partner

(713) 427-5005
Lisa.Meyerhoff@bakermckenzie.com


Cc:          Lilith Games
Attachment


















**BAKER & McKENZIE**

Baker & McKenzie LLP

Bank of America
700 Louisiana, Suite 3000
Houston, TX 77002-2871
United States

Tel: +1 713 427 5000
Fax: +1 713 427 5099
www.bakermckenzie.com

**SUBJECT TO FED. R. EVID. 408**

Asia Pacific
Bangkok
Beijing
Hanoi
Ho Chi Minh City
Hong Kong
Jakarta*
Kuala Lumpur*
Manila*
Melbourne
Shanghai
Singapore
Sydney
Taipei
Tokyo

Europe, Middle East
& Africa
Abu Dhabi
Almaty
Amsterdam
Antwerp
Bahrain
Baku
Barcelona
Berlin
Brussels
Budapest
Cairo
Casablanca
Doha
Dusseldorf
Frankfurt/Main
Geneva
Istanbul
Johannesburg
Kyiv
London
Luxembourg
Madrid
Milan
Moscow
Munich
Paris
Prague
Riyadh
Rome
St. Petersburg
Stockholm
Vienna
Warsaw
Zurich

Latin America
Bogota
Brasilia*
Buenos Aires
Caracas
Guadalajara
Juarez
Mexico City
Monterrey
Porto Alegre*
Rio de Janeiro*
Santiago
Sao Paulo*
Tijuana
Valencia

North America
Chicago
Dallas
Houston
Miami
New York
Palo Alto
San Francisco
Toronto
Washington, DC

* Associated Firm

November 10, 2014

David W. Hansen, Esq.
Skadden, Arps, Slate, Meagher & Flom, LLP
525 University Avenue
Palo Alto, CA 94301

Our ref:   32295916-000001

**By email**
david.hansen@skadden.com

**uCool's Violations of Lilith's Copyrights**

Dear Mr. Hansen,

We received your October 24, 2014 letter and have discussed it with Lilith Games ("Lilith").  For multiple reasons, some of which are discussed below, we find your client's explanation/position entirely unpersuasive regarding Lilith's copyright infringement claims against uCool's Heroes Charge game.

Your letter cites a few U.S. cases for the proposition that U.S. copyright law does not apply outside of the United States.  Your letter fails to address application of the Berne Convention to this dispute.  As you know, the Berne Convention gives foreign copyright owners protection for their rights and interests in their copyrighted works in hundreds of other signatory countries.  Specifically, the Berne Convention requires signatories of the Convention to recognize the copyrights of works of authors from other signatory countries in the same way the signatory country recognizes the copyrights of its own citizens.  As you also know, both the United States and China are signatories to the Berne Convention.

We previously advised that Lilith owns a China certificate of copyright registration for its software code for its game.  Lilith's software personnel examined uCool's software code for the Heroes Charge game and compared it with Lilith's copyright-registered code for its game. The similarity between Lilith's registered software code and uCool's software code its Heroes Charge game **exceeds 90%**.  That level of software code similarity is intentional, not coincidental.

Your letter alleges that Lilith is not the copyright owner of the game in dispute.  That is incorrect.  The China certificate of copyright registration states that the author is an individual named "Li Hongan", and clearly states that Lilith is the owner of the copyright in the game.  We also note that Li Hongan is an employee of Lilith (the copyright owner).  Thus, UCool's challenge to Lilith's copyright ownership of its game fails.

Your letter incorrectly calls Lilith's game "DOTA Legends."  That is not the name of Lilith's game.  Your letter also alleges that Lilith's copyrighted game is a derivative work

Baker & McKenzie LLP is a member of Baker & McKenzie International, a Swiss Verein.
358611-v1\HOUDMS

of the DOTA and DOTA 2 games. Lilith's game is not a derivative work of any game, including **Blizzard's** DOTA and DOTA 2 games. UCool's effort to connect Lilith's copyrighted game and Blizzard's game is meritless. Specifically, uCool incorrectly calls Lilith's game "DOTA Legends", implying that Lilith's game is a work associated with the DOTA game. The name of Lilith's game in Chinese characters is "刀塔传奇 / <u>Dao Ta Chuan Qi.</u> The first two characters of the name of Lilith's game may sound similar to the word "DOTA," but those two characters are not the complete or official name of Lilith's game.

Your letter also argues that characters in Lilith's copyrighted game are the same or similar to characters in the DOTA and DOTA 2 games. Lilith's game characters' appearances/expressions are very different from the characters' appearances/expressions in the DOTA and DOTA 2 games. As you know, copyright law focuses on expressions of ideas, not the ideas themselves. Accordingly, any alleged similarity between Lilith's and Blizzards' ideas for characters in their respective games is irrelevant to the dispute between Lilith and uCool regarding the expressions of character ideas in Lilith's and uCool's games. As noted in our previous communications, Lilith owns China copyright registrations for the **expressions** (images) of more than 80 character designs in its game.

Your letter notes that Lilith must have been analyzing a beta-test version of uCool's Heroes Charge game, that uCool recently revised the beta-test version of its game, and that the revised images in the Heroes Charge game are "significantly different" from the character images in Lilith's copyrighted game. We and our client reviewed various revised character images in the Heroes Charge game. There are many expressions/images of characters in uCool's Heroes Charge game that are much more relevant to Lilith's copyright infringement claims than uCool's revisions listed in your letter. Attached are screenshot comparisons between Lilith 's copyright-registered character expressions in its game and uCool's character expressions in the revised version of uCool's Heroes Charge game. They show substantially similar, if not identical, images.

Your letter also alleges that Lilith's game contains stock features like those in the DOTA (and other) games, and that stock features are not protectable under copyright law. Lilith's game does not contain stock features from DOTA or other games. Rather, Lilith's game contains protectable expressions of ideas that are registered under China copyright law.

In addition, the play of Lilith's copyrighted game and the play of the DOTA game are completely unrelated. In contrast, uCool's Heroes Charge game copied virtually all play (including details of the play) from Lilith's copyrighted game. Further, all software code of Lilith's game is original code and unrelated to the software code in the DOTA and other games. As noted above, 90% of the software code in uCool's Heroes Charge game is quite similar to Lilith's copyright-registered software code for its game.

**BAKER & M<sup>c</sup>KENZIE**

In summary, Lilith maintains its claims of copyright infringement by uCool's Heroes game, and will not withdraw its request that Apple's takedown department remove the Heroes Charge game from the App Store.

Very truly yours,

*Lisa H. Meyerhoff*

Lisa Meyerhoff
Partner

(713) 427-5005
Lisa.Meyerhoff@bakermckenzie.com


Cc:            Lilith Games
Attachment





















