IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LILITH GAMES (SHANGHAI) CO. LTD., <br><br> Plaintiff, <br><br> v. <br><br> UCOOL, INC. AND UCOOL LTD., <br><br> Defendants. | Case No. 15-CV-01267-SC <br><br> ORDER GRANTING IN PART AND DENYING IN PART MOTION TO <u>DISMISS</u> |

### I. <u>INTRODUCTION</u>

Now before the Court is Defendants uCool, Inc. and uCool LTD's ("uCool") motion to dismiss Plaintiff Lilith Games Co.'s ("Lilith") claims for trade secret misappropriation and unfair business competition as alleged in Lilith's first amended complaint. ECF Nos. 20 ("FAC"); 29 ("MTD"). The motion is fully briefed[1] and appropriate for resolution without oral argument under Civil Local Rule 7-1(b). In its motion and supporting papers, uCool argues that Lilith's second, third, fourth, and fifth claims for relief should be dismissed with prejudice because (1) Lilith's trade

---

[1] ECF Nos. 36 ("Opp'n"); 39 ("Reply").

secret claim fails to properly allege misappropriation; (2) Lilith's trade secret and unfair competition claims are preempted by the Copyright Act; and (3) Lilith's unfair competition claims are preempted by its trade secrets claim.  For the reasons set forth below, uCool's motion to dismiss is GRANTED in part and DENIED in part.  Lilith adequately alleged misappropriation, and neither its misappropriation claim nor its unfair competition claims are preempted by the Copyright Act.  Lilith's unfair competition claims, however, are preempted by its trade secrets misappropriation claim.  Dismissal as to those claims is with leave to amend if Lilith is able to add allegations to avoid preemption.

**II.  BACKGROUND**

For the purposes of this motion, the Court takes the facts stated in Lilith's first amended complaint as true.  They are, in pertinent part, as follows:

Plaintiff Lilith is a video game developer that released the game Dao Ta Chuan Qi (translated as "Sword and Tower")[2] in China in February 2014.  Lilith owns the copyrights in Sword and Tower's source code and possesses Chinese copyright registrations.  In March 2015, Lilith decided to release Sword and Tower in other countries including the United States, Japan, and certain European countries.

Defendant uCool is a video game marketer who unlawfully obtained access to the copyrighted software code for Sword and Tower and used it to create its own game, Heroes Charge, which it

---

[2] The game has also been referred to as "Dota Legends".  See, e.g., ECF No. 43-01 ¶ 2.

2

published in the United States in August 2014. Sword and Tower and Heroes Charge both involve the same ideas, and the expression of those ideas in both games is virtually identical. In addition, Heroes Charge includes a portion of Lilith's code that triggers Lilith's copyright notice at a certain point while playing Heroes Charge.

In its first claim for relief for copyright infringement, Lilith alleges that uCool unlawfully gained access to Lilith's copyrighted computer software code embodied in Sword and Tower and copied it into the source code embodied in Heroes Charge. Because Sword and Tower is not a United States work as defined in 17 U.S.C. Section 101, Lilith brings its copyright infringement claim under the Berne Convention, an international agreement governing copyright.

In its second claim for relief, Lilith alleges that the 240,000 lines of software code that is embodied in Sword and Tower is a trade secret and that uCool knowingly misappropriated that trade secret in violation of California's Uniform Trade Secrets Act (Cal. Civ. Code § 3426, et seq.) when it used Lilith's code to create Heroes Charge. Lilith allegedly maintains the Sword and Tower source code confidentially, limiting access only to those employees who need access to perform their duties.[3] Lilith also asserts that "[t]he mobile game business is extremely competitive, and it is well known in the industry that computer software code embodied in such games is considered to be the confidential

---

[3] Further, those who are granted access are required to agree that the code is owned by Lilith, will not be disclosed to any third party, and is to be confidentially maintained.

3

property of the game's owner." FAC ¶ 23.

Lilith's third, fourth, and fifth claims for relief allege violations of California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, et seq.). Specifically, Lilith claims that by misappropriating Lilith's trade secrets, uCool engaged in unlawful, unfair, and fraudulent business practices.

### III. LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). On a motion under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). While a complaint need not allege detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common

sense." Id. at 679.

When granting a motion to dismiss, the court is generally required to grant the plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile. Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 246-47 (9th Cir. 1990). In determining whether amendment would be futile, the court examines whether the complaint could be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original complaint." Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990).

**IV. DISCUSSION**

uCool has moved the Court to dismiss (1) Lilith's second claim for relief for violations of California's Uniform Trade Secrets Act ("CUTSA") under California Civil Code section 3426, and (2) Lilith's third, fourth, and fifth claims for relief for violations of California's Unfair Competitions Law ("UCL") under California Business and Professions Code section 17200. The Court addresses each in turn.

    **A. Lilith's Second Claim for Relief - Trade Secret Misappropriation**

uCool's challenge to Lilith's second claim for relief is twofold. First, uCool argues that Lilith fails to state a claim for trade secret misappropriation under Rule 12(b)(6). Second, uCool asserts that Lilith's trade secret misappropriation claim is preempted by the Copyright Act. The Court does not find either argument persuasive.

### 1. **Adequacy of Pleading Under Rule 12(b)(6)**

To state a claim for misappropriation of trade secrets under the CUTSA, a plaintiff must allege two elements: (1) the existence of a trade secret, and (2) misappropriation of the trade secret. AccuImage Diagnostics Corp. v. Terarecon, Inc., 260 F. Supp. 2d 941, 950 (N.D. Cal. 2003) (citing Cal. Civ. Code § 3426.1(b)). uCool argues that Lilith's trade secret misappropriation claim should be dismissed with prejudice for failure to adequately allege the second element -- misappropriation.

Misappropriation can be established by alleging either acquisition or disclosure/use:

> (b) Misappropriation means:
>
> (1) Acquisition of a trade secret of another without express or implied consent by a person who knows or has reason to know that the trade secret was acquired by improper means; or
>
> (2) Disclosure or use of a trade secret of another without express or implied consent by a person who:
>
> (A) Used improper means to acquire knowledge of the trade secret; or
>
> (B) At the time of the disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was:
>
> (i) derived from or through a person who had utilized improper means to acquire it;
>
> (ii) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
>
> (iii) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use.

Cal. Civ. Code § 3426.1. As explained below, Lilith adequately

pleaded misappropriation by both acquisition and use.

Lilith adequately pleaded facts showing that uCool acquired and used the source code embodied in Sword and Tower without Lilith's consent. For example, Lilith alleges that the expression of ideas in both games is almost identical -- "a virtual cut and paste." FAC ¶ 2. Moreover, the Complaint alleges that Heroes Charge includes a portion of Lilith's code that triggers Lilith's copyright notice.

Lilith also adequately pleaded facts showing that uCool knew or had reason to know that the source code was acquired by improper means or in breach of a duty to maintain its secrecy. "Improper means" is defined as "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." Cal. Civ. Code § 3426.1. Lilith's theory of misappropriation is based on the alleged "theft" of its source code. FAC ¶¶ 2, 25. In addition to alleging that uCool stole the source code, Lilith pleaded facts providing "plausible grounds to infer" that uCool knew the source code in Heroes Charge belonged to Lilith. Twombly, 550 U.S. at 556. For example, uCool would have known that the code belonged to Lilith because, according to Lilith, Heroes Charge is almost identical to Sword and Tower. Lilith also alleges that it is well known that source code is the confidential property of a game's owner. In that context, it is reasonable to infer that Lilith knew the code was acquired through improper means or in breach of a duty because Lilith would not have given its competitor, uCool, free access to its code. Finally, if there was any doubt as to whom the source code belonged, uCool would have known that it was in possession of

7

1  Lilith's confidential property upon discovering Lilith's copyright
2  notice prominently displayed within Heroes Charge.

3  uCool's reliance on Pellerin v. Honeywell International, Inc.
4  is misplaced. 877 F. Supp. 2d 983 (S.D. Cal. 2012). In Pellerin,
5  the court dismissed the defendant's trade secret misappropriation
6  counterclaim because it relied on the "inevitable disclosure
7  doctrine" to show misappropriation.[4] Id. at 989. But Lilith's
8  trade secret misappropriation claim does not invoke the "inevitable
9  disclosure doctrine." Instead, it alleges (either explicitly or
10 through reasonable inferences) that uCool acquired and used
11 Lilith's source code, was aware that the source code belonged to
12 Lilith, and knew or should have known that the source code was
13 Lilith's confidential property acquired through improper means or
14 in breach of a duty of confidentiality.

15 Be in, Inc. v. Google, Inc. is also inapposite. No. 12-CV-
16 03373-LHK, 2013 WL 5568706 (N.D. Cal. Oct. 9, 2013). The plaintiff
17 in Be in, Inc. attempted to establish misappropriation with two
18 conclusory statements -- that Google's product "constitute[s] the
19 misappropriation and unauthorized use of Be In's trade secrets" and
20 that Google "acquired, disclosed, and/or used or intend to use
21 Plaintiff's trade secrets through improper means." Id. at *3. In
22 addition, the plaintiff failed to allege any type of impropriety.
23 Id. As already described, Lilith has alleged specific facts

---

[4] In jurisdictions where it is accepted, the "inevitable disclosure doctrine" allows a party in to prove misappropriation by demonstrating that a former employee's new employment will inevitably lead the former employee to rely on the former employer's trade secrets. Id. As the court noted, California does not recognize this doctrine and requires a party claiming trade secret misappropriation to allege facts which establish actual misappropriation. Id.

establishing that uCool knowingly acquired and used Lilith's trade secrets without Lilith's consent through improper means (or from a person who used improper means or breached a duty of confidentiality).

Finally, uCool's citation to MedioStream, Inc. v. Microsoft Corp. is also unhelpful. 869 F. Supp. 2d 1095, 1114 (N.D. Cal. 2012). uCool claims that MedioStream stands for the proposition that "[t]he mere fact that information was kept confidential [is] not sufficient" to establish improper means or impropriety. Reply at 5. MedioStream is distinguishable, however, because the defendant in that case had reason to believe that the plaintiff's trade secret had been properly licensed.[5] Id. As a result, in order to establish impropriety, the plaintiff had to plead additional facts showing the defendant had reason to know that the license was invalid. Id. Here, Lilith alleges uCool knowingly used Lilith's source code without consent. In contrast to the defendant in MedioStream, there are no facts alleged in this case suggesting that uCool believed Lilith had consented to uCool using its code; nor does uCool claim as much.

For the above reasons, Lilith adequately pleaded facts establishing a claim for trade secret misappropriation.

### 2. Preemption by the Copyright Act

The Ninth Circuit applies a two part test to determine when a state law has been preempted by the Copyright Act: "First, the content of the protected right must fall within the subject matter

---

[5] The defendant purchased the product containing the trade secret from a former licensee without any knowledge that the seller no longer held a valid license. Id.

9

of copyright as described in 17 U.S.C. §§ 102 and 103 [and s]econd, the right asserted under state law must be equivalent to the exclusive rights contained in section 106 of the Copyright Act." Sybersound Records, Inc. v. UAV Corp., 517 F.3d 1137, 1150 (9th Cir. 2008).

The first prong of this test is satisfied wherever the works at issue come within the "subject matter of copyright" as defined by 17 U.S.C. §§ 102-103, even where the works at issue (or some parts of those works) may not actually be protected under the Copyright Act. See, e.g., Entous v. Viacom International Inc., 58 U.S.P.Q. 2d 1628, 1634 (C.D. Cal. 2001); Selby v. New Line Cinema Corp., 96 F.Supp.2d 1053, 1058-59 (C.D. Cal. 2000); Firoozye v. Earthlink Network, 153 F. Supp. 2d 1115, 1124-25 (N.D. Cal. 2001). Lilith admits that "[t]here is no dispute that Lilith's source code over which it claims a trade secret . . . falls within the subject matter of the Copyright Act." Opp'n at 9. Accordingly, all that remains is to assess the trade secret misappropriation claim under the second prong of the preemption analysis.

The second prong of the analysis is satisfied wherever the rights protected by state law are "equivalent" to those protected by the Copyright Act. In order to avoid preemption, "the state cause of action must protect rights which are qualitatively different from the copyright rights." Del Madera Properties v. Rhodes and Gardner, Inc., 820 F.2d 973, 977 (9th Cir. 1987). Specifically, "[t]he state claim must have an 'extra element' which changes the nature of the action." Id.

Courts have regularly held that the element of secrecy within a trade secret misappropriation claim constitutes an extra element

that changes the nature of the copyright action.  See S.O.S., Inc. v. Payday, Inc., 886 F.2d 1081, 1090 n.13 (9th Cir. 1989); Trandes Corp. v. Guy F. Atkinson Co., 996 F.2d 655, 660 (4th Cir. 1993); Computer Assocs. Int'l, Inc. v. Altai, Inc., 982 F.2d 693, 717 (2d Cir. 1992); Firoozye, 153 F. Supp. 2d at 1130-31; see also 1 Melvin B. Nimmer & David Nimmer, Nimmer on Copyright § 1.01, at 1-39 to 1-40 (1999) ("Actions for disclosure and exploitation of trade secrets require a status of secrecy, not required for copyright, and hence, are not pre-empted.  This conclusion applies whether or not the material subject to the trade secret is itself copyrightable.").  Here, Lilith has pleaded facts showing that its source code was maintained as a secret.  See, e.g., FAC ¶ 10 ("Lilith closely guards its software code and maintains it as strictly confidential at all times.  Indeed, only authorized personnel are permitted access to Lilith's computer software code . . . .").  Thus, Lilith's trade secret misappropriation claim is not preempted by the Copyright Act.

uCool's preemption argument relies on Jobscience, Inc. v. CVPartners, Inc., No. C 13-04519-WHA, 2014 WL 93976, at *4 (N.D. Cal. Jan. 9, 2014) and Kema, Inc. v. Koperwhats, No. C-09-1587-MMC, 2010 WL 726640, at *3 (N.D. Cal. Mar. 1, 2010).  The facts in Jobscience and Kema, however, are different from this case in an important way.  In both Jobscience and Kema, the plaintiffs failed to adequately plead the existence of a trade secret because the so-called trade secrets in those cases were not maintained confidentially.  See Jobscience, Inc., 2014 WL 93976, at *5; Kema, 2010 WL 726640, at *3.  Specifically, the source code that the plaintiffs were claiming as a trade secret was open to public

11

inspection at the U.S. Copyright Office.  Id.  Without the element of secrecy, the plaintiff's claims were preempted by the Copyright Act.  Id.

In contrast, Lilith has not alleged facts that defeat the confidentiality of its trade secrets.  Unlike the plaintiffs in Jobscience and Kema, its source code is not available for public inspection with the U.S. Copyright Office.  Although Lilith does allege that it owns Chinese copyrights, there is nothing about owning a copyright that is antithetical to maintaining the same code as a trade secret, assuming it is not available for public inspection as a result.  Nowhere in its complaint does Lilith suggest that the Sword and Tower code is open to the public.[6]

### B. Lilith's Third, Fourth, and Fifth Claims for Relief - Violations of California's Unfair Competition Law

California's Unfair Competition Law ("UCL") prohibits any "unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  "Violation of almost any federal, state or local law may serve as the basis for a UCL claim."  Sleep Sci. Partners v. Lieberman, No. 09-04200 CW, 2010 WL 1881770, at *10 (N.D. Cal. May 10, 2010) (citing Saunders v. Super. Ct., 27 Cal. App. 4th 832, 838-39 (1994)).  Lilith alleges that by misappropriating its trade secrets uCool has engaged in unlawful, unfair, and fraudulent business practices in violation of the UCL.

---

[6] Code deposited with the Chinese Copyright Office is not available to the public.  See Article 7 of Retrieval Measures on Registration Records of Computer Software Copyright (promulgated by the Copyright Protection Center of China and effective from March 10, 2009) ("The following content of the software registration records is not open to the public for retrieval: (1) source code; . . . (4) materials involving the software registrant's technical secret or trade secret . . . .").

12

uCool contends, however, that Lilith's UCL claims should be dismissed because they are preempted by the Copyright Act and the CUTSA. As explained below, Lilith's UCL claims are not preempted by the Copyright Act for the same reasons its trade secret misappropriation claim is not preempted by the Copyright Act. Its UCL claims are, however, preempted by the CUTSA.

### 1. Preemption by the Copyright Act

uCool first argues that Lilith's UCL claims are preempted by the Copyright Act because they "provide no 'extra element' required to overcome preemption by the Copyright Act." MTD at 11. Not so. Because Lilith's UCL claims are predicated on its trade secret misappropriation claim, those claims also have the extra element of secrecy that precludes preemption by the Copyright Act. See Firoozye, 153 F. Supp. at 1131 ("[T]he plaintiff's unfair competition claim is not preempted to the extent it is based on the . . . misappropriation of trade secret claims.").

### 2. Preemption by the California Uniform Trade Secrets Act

uCool also argues that Lilith's UCL claims are preempted by the CUTSA. On this point, the Court agrees.

The UCL "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co., 20 Cal. 4th 163, 180 (1999). The CUTSA, however, preempts state law claims insofar as they are based on misappropriation of a trade secret. See Ali v. Fasteners for Retail, Inc., 544 F. Supp. 2d 1064, 1070 (E.D. Cal. 2008). The CUTSA expressly does not preempt "(1) contractual remedies . . .

13

(2) other civil remedies that are not based upon misappropriation of a trade secret, or (3) criminal remedies." Cal. Civ. Code § 3426.7(b). For those causes of action not specifically exempted, "'[t]he preemption inquiry . . . focuses on whether [they] are no more than a restatement of the same operative facts supporting trade secret misappropriation.'" PQ Labs, Inc. v. Yang Qi, No. 12-0450-CW, 2012 WL 2061527, at *5 (N.D. Cal. June 7, 2012) (quoting Convolve, Inc. v. Compaq Computer Corp., No. 00CV5141(GBD), 2006 WL 839022, at *6 (S.D.N.Y. (applying California law))). Accordingly, the Court must compare Lilith's trade secret misappropriation claim with its UCL claims "to determine if the latter are based on confidential information other than a trade secret or if there is some material distinction between the wrongdoing alleged in the claims." Id.

Lilith's UCL claims are based exclusively on Lilith's trade secret misappropriation claim. FAC ¶ 31 ("uCool has engaged in an unlawful business practice by misappropriating Lilith's trade secret."); FAC ¶ 37 ("uCool has engaged in an unfair business practice by misappropriating Lilith's trade secret."); FAC ¶ 44 ("uCool has engaged in a fraudulent business practice by misappropriating Lilith's trade secret."). Because Lilith alleges the same factual allegations in its UCL and CUTSA claims, the UCL claims are preempted by the CUTSA and hereby dismissed with leave to amend. See Digital Envoy, Inc. v. Google, Inc., 370 F. Supp. 2d 1025, 1035 (N.D. Cal. 2005) (dismissing unfair competition claims because they "are based on the identical facts alleged in its claim for misappropriation of trade secrets."); Sleep Sci. Partners v. Lieberman, No. 09-04200-CW, 2010 WL 1881770, at *10 (N.D. Cal. May

10, 2010) (statutory unfair competition claim "is preempted by CUTSA to the extent that it is based on the misappropriation of Plaintiffs' trade secrets."); PQ Labs, Inc., 2012 WL 2061527, at *5 (dismissing unfair competition claim with leave to amend because it was "premised upon the same nucleus of facts as the . . . cause of action for misappropriation of trade secrets."). If Lilith decides to file an amended complaint, it must identify the conduct of uCool, if any, that applies the UCL in a manner that avoids preemption.

**V. CONCLUSION**

As set forth above, the Court GRANTS in part and DENIES in part uCool's motion to dismiss. Lilith's second claim for relief adequately pleads facts establishing a claim for misappropriation of trade secrets. Further, because it contains the additional element of secrecy, it is not preempted by the Copyright Act. Lilith's UCL claims, however, are preempted by Lilith's claim for trade secret misappropriation because they are no more than a restatement of the same operative facts. Accordingly, Lilith's third, fourth, and fifth claims for relief are hereby dismissed with leave to amend.

IT IS SO ORDERED.

Dated: July 8, 2015

UNITED STATES DISTRICT JUDGE

15