1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9   LILITH GAMES (SHANGHAI) CO.    )  Case No. 15-CV-01267-SC
    LTD.,                          )
10                                 )  ORDER DENYING DEFENDANTS'
              Plaintiff,           )  MOTION TO COMPEL
11                                 )
         v.                        )
12                                 )
                                   )
13  UCOOL, INC. AND UCOOL LTD.,    )
                                   )
14            Defendants.          )
                                   )
15  _____)

16

17   **I.  INTRODUCTION**

18        Now before the Court is Defendants uCool, Inc. and uCool LTD's

19   ("uCool") motion to compel particularized trade secret disclosure

20   by Plaintiff Lilith Games Co. ("Lilith").  ECF No. 45 ("MTC").  The

21   motion is fully briefed[1] and appropriate for resolution without

22   oral argument under Civil Local Rule 7-1(b).  The hearing scheduled

23   for August 14, 2015 is VACATED.

24        In its motion and supporting papers, uCool asks the court to

25   compel Lilith to "to disclose its trade secrets with adequate

26   particularity" and to bar "Lilith from taking discovery until such

27   _____

28   [1] ECF Nos. 55 ("Opp'n"); 60 ("Reply").

1    productions are made" pursuant to section 2019.210 of the

2    California Code of Civil Procedure.  MTC at 15.  Because Lilith has

3    already disclosed its trade secrets with adequate particularity,

4    uCool's motion is DENIED.  Further, Lilith is not barred from

5    taking discovery.

6

7    **II.  <u>BACKGROUND</u>**

8        Plaintiff Lilith is a video game developer that released the

9    game <u>Dao Ta Chuan Qi</u> (translated as "<u>Sword and Tower</u>")[2] in China in

10   February 2014.  Lilith claims to own the copyrights in <u>Sword and</u>

11   <u>Tower</u>'s source code and to possess Chinese copyright registrations.

12   In March 2015, Lilith decided to release <u>Sword and Tower</u> in other

13   countries including the United States, Japan, and certain European

14   countries.

15       Defendant uCool is an American video game marketer who

16   allegedly used the copyrighted software code for <u>Sword and Tower</u> to

17   create its own game, <u>Heroes Charge</u>, which it published in the

18   United States in August 2014.  According to Lilith's complaint,

19   <u>Sword and Tower</u> and <u>Heroes Charge</u> both involve the same ideas, and

20   their expression of those ideas is virtually identical.  In

21   addition, <u>Heroes Charge</u> allegedly includes a portion of Lilith's

22   code that triggers Lilith's copyright notice to appear at a certain

23   point while playing <u>Heroes Charge</u>.

24       In its first claim for relief for copyright infringement,

25   Lilith alleges that uCool unlawfully gained access to Lilith's

26   copyrighted computer software code embodied in <u>Sword and Tower</u> and

27   _____

[2] The game has also been referred to as "<u>Dota Legends</u>".  <u>See, e.g.</u>,
28   ECF No. 43-01 ¶ 2.

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

copied it into the source code embodied in <u>Heroes Charge</u>. Because <u>Sword and Tower</u> is not a United States work as defined in 17 U.S.C. § 101, Lilith brings its copyright infringement claim under the Berne Convention, an international agreement governing copyright, to which both the United States and China are signatories.

In its second claim for relief, Lilith alleges that 240,000 lines of software code embodied in <u>Sword and Tower</u> are a trade secret and that uCool knowingly misappropriated that trade secret in violation of California's Uniform Trade Secrets Act (Cal. Civ. Code § 3426, <u>et</u> <u>seq.</u>) when it allegedly used Lilith's code to create <u>Heroes Charge</u>. Lilith claims to maintain the <u>Sword and Tower</u> source code confidentially, limiting access only to those employees who need access to perform their duties.[3]

Lilith's third, fourth, and fifth claims for relief allege violations of California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, <u>et seq.</u>). Specifically, Lilith claims that by misappropriating Lilith's trade secrets, uCool engaged in unlawful, unfair, and fraudulent business practices.

**III. <u>LITIGATION HISTORY</u>**

Lilith filed its first amended complaint on April 8, 2015. ECF No. 20 ("FAC"). On April 22, 2015, Lilith filed a motion for preliminary injunction seeking to enjoin uCool from reproducing, copying, preparing any derivative works, or distributing any of Lilith's trade secrets or copyrights allegedly contained in uCool's

---

[3] Further, Lilith claims that those who are granted access are required to agree that the code is owned by Lilith, will not be disclosed to any third party, and is to be confidentially maintained.

**United States District Court**
For the Northern District of California

1   video game, <u>Heroes Charge</u>.   ECF No. 30 ("Prel. Inj. Mot.").

2        On June 4, 2015 and again on June 18, 2015, the Court

3   continued the hearing on Lilith's motion for preliminary injunction

4   until August 15, 2015 in order to allow the parties to take limited

5   discovery in preparation for the preliminary injunction hearing.

6   ECF Nos. 48, 58.

7        The parties held a Rule 26(f) conference on May 26, 2015, and

8   discovery commenced immediately thereafter.   uCool, however, has

9   not responded to Lilith's discovery requests because it claims that

10  Lilith is barred from taking discovery until Lilith provides a more

11  particularized description of its trade secrets.   As explained

12  below, Lilith is not barred from taking discovery, and uCool may no

13  longer refuse to provide discovery responses on that basis.

14

15  **IV.  <u>DISCUSSION</u>**

16       uCool's motion presents two related issues: (1) Whether section

17  2019.210 of the California Code of Civil Procedure applies to cases

18  brought in federal court; and (2) if section 2019.210 does apply,

19  whether Lilith satisfied its requirement to identify trade secrets

20  with "reasonable particularity."   For the reasons set forth below,

21  the Court finds that section 2019.210 applies to this case and that

22  Lilith identified its trade secrets with "reasonable

23  particularity."

24       **A.   <u>Applicability of Section 2019.210 in Federal Court</u>**

25       The Court must first decide whether the California statutory

26  requirement in section 2019.210 for a plaintiff to identify his

27  trade secrets with "reasonable particularity" should apply in a

28  federal court sitting in California.   The Ninth Circuit has not

4

decided this issue, and federal district courts are split.  Compare

Gabriel Technologies Corp. v. Qualcomm Inc., No. 08CV1992, 2012

U.S. Dist. LEXIS 33417, at *11 (S.D. Cal. March 13, 2012) and Soc.

Apps, LLC v. Zynga, Inc., 2012 WL 2203063, at *2 (N.D. Cal. June

14, 2012) (holding that section 2019.210 did apply), with Funcat

Leisure Craft, Inc. v. Johnson Outdoors, Inc., No. S-06-0533, 2007

U.S. Dist. LEXIS 8870, at *7-9 (E.D. Cal. Jan 29, 2007) and

Hilderman v. Enea Teksci, Inc., No. 05CV0149-BTM, 2010 U.S. Dist.

LEXIS 1527, at *6-10 (S.D. Cal. Jan 8, 2010) (holding that section

2019.210 did not apply).  For the reasons set forth below, the

Court follows the cases applying section 2019.210 in federal cases.

When questions of state law are raised in federal court, the

federal court generally applies the state's substantive law but

federal procedural law.  Erie R. Co. v. Tompkins, 304 U.S. 64, 78

(1938).  The determination of whether a rule is "substantive"

depends on the legal context and requires the court to consider

whether the state rule conflicts with any applicable federal rule.

Hanna v. Plumer, 380 U.S. 460, 471 (1965).  If there is a conflict,

the federal rule prevails.  If there is no conflict, the court then

looks to whether the failure to apply the state rule would

significantly affect the outcome of the litigation or create

incentives for forum-shopping.  Id. at 468.

Section 2019.210 of the California Code of Civil Procedure

states:

> In any action alleging the misappropriation of a trade
> secret . . . before commencing discovery relating to the
> trade secret, the party alleging the misappropriation
> shall identify the trade secret with reasonable

United States District Court
For the Northern District of California

5

particularity subject to any orders that may be appropriate under Section 3426.5 of the Civil Code.[4] Cal. Civ. Proc. Code § 2019.210.

Courts declining to apply section 2019.210 in federal cases have held that section 2019.210 conflicts with Federal Rule of Civil Procedure 26.  See, e.g., Hilderman, 2010 U.S. Dist. LEXIS 1527, at *6-10.  Specifically, those courts have reasoned that, by allowing the defendant to refuse discovery until the plaintiff has satisfied the "reasonable particularity" requirement, section 2019.210 erects a bar to commencing discovery that would not otherwise exist in federal court.  See id. at *7.

Courts in the Northern District of California, however, have generally found that section 2019.210 is applicable in federal cases.  See Zynga, 2012 WL 2203063, at *2; Jobscience, Inc. v. CVPartners, Inc., No. C 13-04519 WHA, 2014 WL 852477, at *4 (N.D. Cal. Feb. 28, 2014).  These courts have held that section 2019.210 assists the court in defining the appropriate scope of discovery in a trade secrets case and does not conflict with any Federal Rule of Civil Procedure.  See id.

The Court finds the reasoning of the cases applying section 2019.210 in federal cases more persuasive.  Section 2019.210 is generally consistent with Rule 26's requirements of early disclosure of evidence and the Court's authority to control the timing and sequence of discovery in the interests of justice.  It

---

[4] A trade secret is "information, including a formula, pattern, compilation, program, device, method, technique, or process, that: (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."  Cal. Civ. Code § 3426.1(d); see IMAX Corp. v. Cinema Technologies, Inc. 152 F.3d 1161, 1165 (1998).

is also consistent with the court's authority to issue a protective

order regarding discovery of trade secrets and confidential

information as set forth in Rule 26(c)(1)(G).  What is more, by

applying section 2019.210 to trade secret claims filed in federal

court, courts avoid creating improper incentives for forum

shopping.  Refusal to apply section 2019.210 in federal cases could

allow plaintiffs to change their trade secret claims in light of

information revealed in discovery, which would attract plaintiffs

to the federal forum.  See id. (citing Computer Economics, 50 F.

Supp. 2d at 992; Gabriel Technologies, 2012 WL 849167 at *4).

For these reasons, the Court finds that section 2019.210 is

properly applied in this case.

**B.    Section 2019.210 Analysis**

Section 2019.210 requires the plaintiff to identify the trade

secret "with reasonable particularity," but it is not entirely

clear from the statute what "reasonable particularity" means in a

given case.  Cal. Civ. Proc. Code § 2019.210.  In general, a

plaintiff's identification of trade secrets are "to be liberally

construed . . . and doubts about the permissible scope of discovery

are to be resolved in favor of disclosure."  Advanced Modular

Sputtering, Inc. v. Super. Ct., 132 Cal. App. 4th 826, 835 (2005).

Thus, "reasonable particularity" does not mean that the plaintiff

"has to define every minute detail of its claimed trade secret at

the outset of the litigation."  Id.  Instead, a plaintiff must make

a showing that is "fair, proper, just and rational . . . in a

manner that will allow the trial court to control the scope of

subsequent discovery, protect all parties' proprietary information,

and allow them a fair opportunity to prepare and present their best

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1  case or defense at a trial on the merits." <u>Id.</u> at 836.

2      "Reasonable particularity" should also be understood in light

3  of the purpose of section 2019.210:

> First, [section 2019.210] promotes well-investigated
> claims and dissuades the filing of meritless trade secret
> complaints. Second, it prevents plaintiffs from using the
> discovery process as a means to obtain the defendant's
> trade secrets. Third, the rule assists the court in
> framing the appropriate scope of discovery and in
> determining whether plaintiff's discovery requests fall
> within that scope. Fourth, it enables defendants to
> form complete and well-reasoned defenses, ensuring that
> they need not wait until the eve of trial to effectively
> defend against charges of trade secret misappropriation.

10  <u>Id.</u> at 833-34 (quoting <u>Computer Economics, Inc. v. Gartner Group</u>

11  <u>Inc.</u>, 50 F. Supp. 2d 980, 985 (1999)). Accordingly, courts have

12  required plaintiffs "to identify or designate the trade secrets at

13  issue with 'sufficient particularity' to limit the permissible

14  scope of discovery by distinguishing the trade secrets 'from

15  matters of general knowledge in the trade or of special knowledge

16  of those persons . . . skilled in the trade.'" <u>Id.</u> at 835 (quoting

17  <u>IMAX Corp. v. Cinema Technologies, Inc.</u>, 152 F.3d 1161, 1164-1165

18  (1998).

19      Finally, the degree of "particularity" that is "reasonable"

20  will differ depending on the trade secrets at issue. For example,

21  in <u>Advanced Modular Sputtering, Inc. v. Superior Court</u>, the alleged

22  trade secrets consisted of "incremental variations on, or advances

23  in the state of the art in [the] highly specialized technical

24  field" of "sputtering equipment" -- equipment used "to deposit a

25  thin and even film of material onto a silicon wafer." <u>Id.</u> at 836.

26  The court required "a more exacting level of particularity" in that

27  case because additional information was necessary "to distinguish

28  the alleged trade secrets from matters already known to persons

**United States District Court**
For the Northern District of California

1    skilled in that field."[5]   <u>Id.</u>

2        In its complaint, Lilith claims its trade secret consists of

3    the 240,000 lines of Lua code authored by Lilith to create <u>Sword</u>

4    <u>and Tower</u>.  FAC ¶ 21.  Those specific lines of code were allegedly

5    authored to express Lilith's original and uniquely developed game.

6    Lilith claims to have taken reasonable steps to maintain that code

7    as a secret, including through password protected servers and

8    confidentiality agreements.  <u>Id.</u> ¶ 22.

9        In addition to its complaint, Lilith has provided additional

10   information showing how its trade secret differs from other source

11   code embodied in <u>Sword and Tower</u>.  For example, in its declaration

12   supporting its motion for preliminary injunction, Lilith explained

13   that its employees exclusively authored 240,000 lines of software

14   code in a language called Lua.  ECF No. 30-14 ("Zhang Decl.") ¶ 4.

15   The declaration also described the game development process whereby

16   Lilith's employees first designed the game and set the rules that

17   would govern its play.  <u>Id.</u> ¶¶ 3-4.  Lilith's programmers then had

18   the task of writing source code in the Lua coding language to

19   implement and bring those development efforts to light.  <u>Id.</u> ¶¶ 4-

20   5.  Lilith further explained that while many people may know the

21   Lua language, "there are numerous ways in which the code can be

22   authored and structured to achieve a desired result."  <u>Id.</u> ¶ 5.

23   The specific way that Lilith authored and structured the Lua Code

24   in <u>Sword and Tower</u> is what Lilith is claiming as its "confidential,

---

26   [5] The court also noted, however, that "the proponent of the alleged
     trade secret is not required . . . to describe it with the greatest
27   degree of particularity possible, or to reach such an exacting
     level of specificity that even its opponents are forced to agree
28   the designation is adequate."  <u>Id.</u>

proprietary, and trade-secret information."  Opp'n at 2.

In addition to those filings, Lilith provided uCool with a Trade Secret Disclosure Statement.  ECF No. 55-2 ("TS Discl. Stmt.").  The disclosure presented facts, supported by Mr. Zhang's declaration, describing Lilith's alleged trade secret in the <u>Sword and Tower</u> code.  The disclosure included information regarding the steps taken by Lilith to develop <u>Sword and Tower</u>, how Lilith's employees authored approximately 240,000 lines of Lua code to implement Lilith's development efforts, how the particular code embodied in <u>Sword and Tower</u> is unique to Lilith and not generally known, and a description of Lilith's efforts to keep its Lua code confidential.  TS Discl. Stmt. at 2-4.

Lilith has provided more than enough information to determine with sufficient particularity the trade secrets at issue in this case.  Moreover, it has provided sufficient information to differentiate its trade secret from other code contained in <u>Sword and Tower</u>.  Specifically, when <u>Sword and Tower</u> is downloaded from the App Store, the download package contains three parts: (1) the game written by Lilith in Lua, comprised of 240,000 unique lines of code; (2) the open-source engine Cocos2d-x, of which there is approximately 1,737,487 lines of source code; and (3) the SDK provided by Apple.  Opp'n at 2.  Lilith is claiming only the first as a trade secret.

In technical cases such as this, a plaintiff must describe the trade secret, not merely the technology.  <u>See</u> <u>IDX Sys. v. Epic Sys. Corp.</u>, 285 F.3d 581, 583-84 (7th Cir. 2002).  Thus, Lilith's description would have been inadequate if it had simply declared that <u>Sword and Tower</u> contained valuable trade secrets and then

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1  pointed to uCool's use of <u>Sword and Tower</u> as misappropriation.  <u>See</u>

2  <u>Mai Sys. Corp. v. Peak Computer, Inc.</u>, 991 F.2d 511, 522-23 (9th

3  Cir. 1993).  Instead, Lilith specifically identified the trade

4  secret contained in the software and differentiated the trade

5  secret from other components.  In doing so, Lilith has set the

6  boundaries for its trade secret.[6]  uCool is therefore in a position

7  to understand Lilith's trade secret claim and formulate its

8  defenses accordingly.

9       Citing <u>Advanced Modular Sputtering, Inc.</u>, uCool argues that "a

10  more exacting level of particularity" is necessary in order to

11  determine Lilith's trade secrets.  Mot. at 12.  Unlike the alleged

12  trade secrets in <u>Advanced Modular Sputtering, Inc.</u>, however, the

13  trade secrets in this case are not hard to identify, nor do they

14  represent "incremental variations on or advances . . . in a highly

15  specialized technical field."  <u>Id.</u>  The code at issue in this case

16  is a unique combination of code in a well-known programming

17  language, not an "incremental variation on or advance" in the

18  fields of software or video game development.  Nor does this case

19  involve a highly specialized field.  Although software programming

20  is technical, authoring programming for a video game is not nearly

21  as specialized or technical as the trade secrets at issue in

22  <u>Advanced Modular Sputtering, Inc.</u>, which required additional

23  disclosure in order to differentiate the trade secrets from other

24  aspects of the equipment.

25

26  ───────────────────
[6] uCool's citation to <u>Perlan Therapeutics, Inc. v. Super. Ct.</u>, 178

27  Cal. App. 4th 1333 (2009) is unavailing.  Unlike the plaintiff in
<u>Perlan</u>, Lilith has segregated its alleged trade secrets and

28  explained how its secrets differ from publicly available knowledge.

**V.  <u>CONCLUSION</u>**

As set forth above, uCool's motion to compel is DENIED.  Lilith is not barred from taking discovery.

IT IS SO ORDERED.

Dated: July 9, 2015

_____

UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California